40

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITY OF DEARBORN, a Municipal corporation, and CHARTER TOWNSHIP OF MERIDIAN, a Municipal corporation, and SHARON GILLETTE, an individual,

Plaintiffs,

vs.

COMCAST OF MICHIGAN III, INC., a Delaware corporation, and COMCAST OF THE SOUTH, INC., a Colorado corporation,

Defendants

Case: 2:08-cv-10156
Judge: Roberts, Victoria A
Referral MJ: Scheer, Donald A
Filed: 01-11-2008 At 12:32 PM
CMP CITY OF DEARBORN, ET AL V. COMCAST OF MI, ET AL (TAM)

MICHAEL J. WATZA (P38726)
CHERYL VERRAN (P71237)
Counsel for Plaintiffs
Kitch Drutchas Wagner Valitutti & Sherbrook
One Woodward Ave. Suite 2400
Detroit, Michigan 48226
(313) 965-7841
248 921 3888
mike.watza@kitch.com

WILLIAM H. IRVING (P39174)
DEBRA A. WALLING (P37067)
Counsel for City of Dearborn
13615 Michigan Avenue
Dearborn, MI 48126-3586
(313) 943-2035
birving@ci.dearborn.mi.us
dwalling@ci.dearborn.mi.us

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to Federal Rule of Civil Procedure 65(b), Plaintiffs Charter Township of Meridian, City of Dearborn, and Sharon Gillette, for the reasons set forth in Plaintiffs'

attached Memorandum of Law in Support of Motion for a Temporary Retraining Order and Preliminary Injunction, and Plaintiffs' Complaint, respectfully move for the entry of a preliminary injunction requiring Defendants Comcast of Michigan III, Inc. and Comcast of the South, Inc. to continue to provide all PEG channels in their current formats, and in their current channel locations pending final disposition of this matter.

On January 9, 2008, there was a conference between attorneys and party representatives in which the movant explained the nature of this Motion and its legal basis and requested but did not obtain concurrence in the relief sought.

Respectfully submitted,

KITCH DRUTCHAS WAGNER
VALITUTTI & SHERBROOK

By: ______________________________

Michael J. Watza (P38726)
One Woodward Ave. Suite 2400
Detroit, Michigan 48226
(313) 965-7841

Dated: January 11, 2008

DET02\1221617.01

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITY OF DEARBORN, a Municipal Corporation, and CHARTER TOWNSHIP OF MERIDIAN, a Municipal corporation, and SHARON GILLETTE, an individual,

Plaintiffs,

vs.

COMCAST OF MICHIGAN III, INC., a Delaware corporation, and COMCAST OF THE SOUTH, INC., a Colorado corporation,

Defendants

Case: 2:08-cv-10156
Judge: Roberts, Victoria A
Referral MJ: Scheer, Donald A
Filed: 01-11-2008 At 12:32 PM
CMP CITY OF DEARBORN, ET AL V. COMCAST OF MI, ET AL (TAM)

---

MICHAEL J. WATZA (P38726)
CHERYL VERRAN (P71237)
Counsel for Plaintiffs
Kitch Drutchas Wagner Valitutti & Sherbrook
One Woodward Ave. Suite 2400
Detroit, Michigan 48226
(313) 965-7841
248 921 3888
mike.watza@kitch.com

WILLIAM H. IRVING (P39174)
DEBRA A. WALLING (P37067)
Counsel for City of Dearborn
13615 Michigan Avenue
Dearborn, MI 48126-3586
(313) 943-2035
birving@ci.dearborn.mi.us
dwalling@ci.dearborn.mi.us

---

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

Pursuant to Federal Rule of Civil Procedure 65(b), Plaintiffs Charter Township of Meridian, City of Dearborn,, and Sharon Gillette, for the reasons set forth in Plaintiffs'

attached Memorandum of Law in Support of Motion for a Temporary Retraining Order and Preliminary Injunction, and Plaintiffs' Complaint, respectfully move for the entry of a temporary restraining order, restraining Defendant Comcast of Michigan III, Inc. and Comcast of the South, Inc. from moving any PEG channels from their current location, and requiring Defendant to continue to provide those channels in their current formats, and in their current channel locations pending final disposition of this matter.

On January 9, 2008, there was a conference between attorneys and party representatives in which the movant explained the nature of this Motion and its legal basis and requested but did not obtain concurrence in the relief sought.

Pursuant to Fed. R. Civ. P. 65(b)(1)(B), the movant's attorney has certified in writing efforts made to give notice and the reasons why it should not be required, and said certification is attached with this Motion.

Respectfully submitted,

KITCH DRUTCHAS WAGNER
VALITUTTI & SHERBROOK

By: ______________________________
Michael J. Watza (P38726)
One Woodward Ave. Suite 2400
Detroit, Michigan 48226
(313) 965-7841

Dated: January 11, 2008

**CERTIFICATION**

I HEREBY CERTIFY, that I have made reasonable and diligent attempts to contact counsel for Defendant Comcast, including personal contact with Juan Otero, Michael Brady and Jeff Jacobs, on January 9, 2008, by way of telephone and email providing oral notice of and requesting concurrence in the relief sought by the Plaintiffs' Complaint and Motions for Temporary Restraining Order and Preliminary Injunction and that concurrence has been denied.

Counsel further certifies that I have this date made reasonable and diligent attempts to contact counsel for Defendant Comcast, including personal contact with Michael Ashton, designated counsel for all Comcast defendants on January 10, 2008, by way of telephone and email providing oral notice of and actual copies of and requesting concurrence in the relief sought by the Plaintiffs'Complaint and Motions for Temporary Restraining Order and Preliminary Injunction and that concurrence has been denied or no response has yet been received.

Counsel for plaintiffs further certifies that time is of the essence given the January 15 deadline established by Comcast and that in order to preserve the status quo as set forth in the Memorandum of Law in support of the Motions for TRO and Preliminary injunction, the entry of the proposed order for temporary restraint is appropriate and supported by fact and law without further notice to defendants.

MICHAEL J. WATZA (P38726)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITY OF DEARBORN, a Municipal corporation, and CHARTER TWP. OF MERIDIAN, a Municipal corporation, and and SHARON GILLETTE, an Individual

Plaintiffs,

vs.

COMCAST OF MICHIGAN III, INC., a Delaware corporation, and COMCAST OF THE SOUTH, INC., a Colorado corporation,

Defendants.

Case No.: ____________

Hon. _________________
Magistrate ____________

MICHAEL J. WATZA (P38726)
CHERYL VERRAN (P71237)
Counsel for Plaintiffs
Kitch Drutchas Wagner Valitutti & Sherbrook
One Woodward Ave. Suite 2400
Detroit, Michigan 48226
(313) 965-7841
(248) 921 3888
mike.watza@kitch.com

WILLIAM H. IRVING (P39174)
DEBRA A. WALLING (P37067)
Counsel for City of Dearborn
13615 Michigan Avenue
Dearborn, MI 48126-3586
(313) 943-2035
birving@ci.dearborn.mi.us
dwalling@ci.dearborn.mi.us

**NOTICE OF HEARING**

PLEASE TAKE NOTICE that Plaintiffs' Motion for Temporary Restraining Order will

be brought on for hearing on January 11, 2008, at a time to be determined by the Court on said day, or as soon thereafter as counsel may be heard, before this Honorable Court.

Respectfully submitted,

KITCH DRUTCHAS WAGNER
VALITUTTI & SHERBROOK

By: ______________________

Michael J. Watza (P38726)
Cheryl Verran (P71237)
Attorneys for Plaintiff
One Woodward Avenue, Suite 2400
Detroit, Michigan 48226-5485

Dated: January 11, 2008

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITY OF DEARBORN, a Municipal corporation, and CHARTER TWP. OF MERIDIAN, a Municipal corporation, and SHARON GILLETTE, an Individual

Plaintiffs,

vs.

COMCAST OF MICHIGAN III, INC., a Delaware corporation, and COMCAST OF THE SOUTH, INC., a Colorado corporation,

Defendants.

Case: 2:08-cv-10156
Judge: Roberts, Victoria A
Referral MJ: Scheer, Donald A
Filed: 01-11-2008 At 12:32 PM
CMP CITY OF DEARBORN, ET AL V. COMC
AST OF MI, ET AL (TAM)

MICHAEL J. WATZA (P38726)
CHERYL VERRAN (P71237)
Counsel for Plaintiffs
Kitch Drutchas Wagner Valitutti & Sherbrook
One Woodward Ave. Suite 2400
Detroit, Michigan 48226
(313) 965-7841
(248) 921 3888
mike.watza@kitch.com

WILLIAM H. IRVING (P39174)
DEBRA A. WALLING (P37067)
Counsel for City of Dearborn
13615 Michigan Avenue
Dearborn, MI 48126-3586
(313) 943-2035
birving@ci.dearborn.mi.us
dwalling@ci.dearborn.mi.us

**NOTICE OF HEARING**

PLEASE TAKE NOTICE that Plaintiffs' Motion for Preliminary Injunction will be

brought on for hearing on ________________________, at ___________ on said day, or as soon thereafter as counsel may be heard, before this Honorable Court.

Respectfully submitted,

KITCH DRUTCHAS WAGNER
VALITUTTI & SHERBROOK

By: ________________________________

Michael J. Watza (P38726)
Cheryl Verran (P71237)
Attorneys for Plaintiff
One Woodward Avenue, Suite 2400
Detroit, Michigan 48226-5485

Dated: January 10, 2008

DET02\1222342.01

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARTER TWP. OF MERIDIAN,
a Municipal corporation, and
CITY OF DEARBORN, a Municipal corporation,
and SHARON GILLETTE,

Plaintiffs,

vs.

COMCAST OF MICHIGAN III, INC.,
a Delaware corporation, and COMCAST OF
THE SOUTH, INC., a Colorado corporation,

Defendants.

Case: 2:08-cv-10156
Judge: Roberts, Victoria A
Referral MJ: Scheer, Donald A
Filed: 01-11-2008 At 12:32 PM
CMP CITY OF DEARBORN, ET AL V. COMC
AST OF MI, ET AL (TAM)

MICHAEL J. WATZA (P38726)
CHERYL VERRAN (P71237)
Counsel for Plaintiffs
Kitch Drutchas Wagner Valitutti & Sherbrook
One Woodward Ave. Suite 2400
Detroit, Michigan 48226
(313) 965-7841
248 921 3888
mike.watza@kitch.com

WILLIAM H. IRVING (P39174)
Corporate Counsel
City of Dearborn
13615 Michigan Avenue
Dearborn, MI 48126-3586
(313) 943-2035
birving@ci.dearborn.mi.us

**MEMORANDUM OF LAW IN SUPPORT OF MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

CONCISE STATEMENT OF ISSUES ..... 1

INTRODUCTION ..... 2

I. COMCAST PLANS TO MAKE PEG CHANNELS MORE EXPENSIVE AND LESS ACCESSIBLE ON JANUARY 15, 2008. ..... 4

A. History of PEG Channels in the Township and the City. ..... 4

B. Comcast's Planned Actions. ..... 5

C. Efforts to Resolve the Dispute. ..... 7

II. PRELIMINARY INJUNCTIVE RELIEF IS APPROPRIATE TO PREVENT COMCAST FROM ALTERING THE STATUS QUO ..... 9

A. Plaintiffs Have a Strong Likelihood of Success on the Merits. ..... 9

1. The planned actions violate Defendants' obligation to deliver PEG channels. ..... 10

2. Defendants will not provide the PEG channels as part of the basic service tier as required by 47 U.S.C. § 543(b). ..... 13

3. Defendants have failed to provide required notice of the proposed change. ..... 14

4. Comcast is failing to ensure that all basic service channels are available without the need for unnecessary equipment as required by 47 C.F.R. § 76.630 and 47 U.S.C. § 544A. ..... 15

5. The proposed actions violate Defendants' franchises. ..... 16

B. Plaintiffs Would Suffer Irreparable Injury Without the Temporary Restraining Order and the Preliminary Injunction. ..... 16

C. The Issuance of the Temporary Restraining Order and the Preliminary Injunction Would Not Cause Substantial Harm to Comcast or to Others. ..... 17

D. The Public Interest Would Be Served By Issuance of the Temporary Restraining Order and the Preliminary Injunction ..... 18

# TABLE OF AUTHORITIES

Federal Cases

*Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.*, 753 F.2d 1354 (6th Cir. 1985)........9

*Denver Area Educational Telecommunications Consortium v. F.C.C.*, 518 U.S. 727 (1996)......1, 2

*Mascio v. Public Employees Retirement System of Ohio*, 160 F.3d 310 (6th Cir. 1998) .................9

*Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749(6th Cir.1998) ........1, 9

*Summit County Democratic Central and Executive Committee v. Blackwell*, 388 F.3d 547 (6th Cir. 2004) ........................................................................................................9

State Cases

*City of Benton Harbor v. Michigan Fuel & Light Co.*, 250 Mich. 614 (1930)..............................10

Federal Statutes

47 U.S.C. § 521 *et. seq*..........................................................................................*passim*

47 U.S.C. § 531..........................................................................................1, 2, 16

47 U.S.C. § 522..........................................................................................13

47 U.S.C. § 543..........................................................................................1, 13

47 U.S.C. § 544a..........................................................................................1, 15, 16

State Statutes

M.C.L. 484.3302(3)(h)..........................................................................................16

Local Statutes

Township Code § 70-91..........................................................................................4

Federal Regulations

47 C.F.R. § 76.630..........................................................................................16

47 C.F.R. ' 76.309 ..........................................................................................14

Other Authorities

H.R. Rep. No. 102-628 ....................11, 13

H.R. Rep. No. 98-934 ....................2, 10, 11

*Matter Of Annual Assessment Of The Status Of Competition In The Market For The Delivery of Video Programming*, 21 F.C.C.R. 2503 (2006) ....................14

*Matter of Implementation of Section 17 of the Cable Television Consumer Protection Act of 1992, First Report and Order*, 9 F.C.C.R. 1981 (1994) ....................15

*Matter of Social Contract for Comcast Cable Communications, Inc.*, 13 F.C.C.R. 3612 (1997) .......14

*Report and Order and Further Notice of Proposed Rulemaking*, 8 F.C.C.R. 5631 (1993)....................12

*Statistical Report On Average Rates For Basic Service, Cable Programming Service, And Equipment*, 21 F.C.C.R. 15087, MM Docket No. 92-266 (2006) ....................13

McQuillin, Municipal Corporations, Section 34:62 ....................10

## CONCISE STATEMENT OF ISSUES

1. Whether the Court should temporarily or preliminarily enjoin Defendants from violating federal laws and regulations, and local franchise requirements, governing the carriage of public, educational and governmental ("PEG") channels.

2. Whether the Court should temporarily or preliminarily enjoin Defendants from changing the manner in which PEG signals are carried without complete and accurate notice to subscribers as required by law.

## CONTROLLING AUTHORITY

1. With respect to the standard for preliminary injunctions and temporary restraining orders: *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir.1998).
2. With respect to Defendants' obligations to provide PEG channels: 47 U.S.C. §§531 and 541 (obligation to carry PEG signals); 47 U.S.C. § 543(b)(7) (PEG on basic service); 47 C.F.R. § 76.630 and 47 U.S.C. § 544a (provision of signals without unnecessary equipment); and the legislative history with respect to those provisions.
3. With respect to the failure to provide notice, 47 C.F.R. § 76.309.
4. With respect to the nature of PEG channels and how Defendants' obligations are to be interpreted, *Denver Area Educational Telecommunications Consortium v. F.C.C.*, 518 U.S. 727, 760-61 (1996); *City of Benton Harbor v. Michigan Fuel & Light Co.*, 250 Mich. 614 (1930) (franchises interpreted in favor of public).

## INTRODUCTION

The Federal Cable Act, 47 U.S.C. § 521 *et seq.*, permits local governments to require cable operators to set aside channel capacity for public, educational and governmental ("PEG") use. 47 U.S.C. § 531. Congress intended PEG channels to foster important First Amendment values by serving as "the video equivalent of the speaker's soap box or the electronic parallel to the printed leaflet." H.R. Rep. No. 98-934, *as reprinted in* 1984 U.S.C.C.A.N. 4655, 4667 (1984).

These channels are not subject to the editorial control of the cable operator. 47 U.S.C. § 531(e). The channels are subject instead to control by the local community. As the Supreme Court concluded:

> ...the requirement to reserve capacity for public access channels is similar to the reservation of a public easement, or a dedication of land for streets and parks, as part of a municipality's approval of a subdivision of land. Cf. post, at 2410 (opinion of KENNEDY, J.). Significantly, these are channels over which cable operators have not historically exercised editorial control.

*Denver Area Educational Telecommunications Consortium v. F.C.C.*, 518 U.S. 727, 760-61 (1996); *see also* 518 U.S. at 734 (referring to PEG channels as "special channels" available to those to whom the Cable Act gives "special cable system access rights"). Comcast's obligation, in other words, is to deliver these channels to the subscriber. The operator has no right to package and bundle these channels as it sees fit, much less design its system so that the channels are less accessible. Moreover, the Cable Act and federal regulations are designed to ensure that the channels can be received and viewed by all subscribers, even those that take the lowest levels of service, without additional charge. Despite this, Defendant Comcast of Michigan III, Inc. ("Comcast III") has informed Plaintiff Charter Township of Meridian (the "Township") that on January 15, 2008, it intends to move the PEG programming now carried on channels 21-24 and

27-31 to what Comcast III calls "channels" 902-906, 912, 913, 915 and 916 and to provide the PEG signals only in a digital format. Defendant Comcast of the South Inc. ("Comcast South") similarly notified the City of Dearborn, Michigan ("City") that as of January 15, 2008 it would no longer provide PEG channels as part of the analog basic service tier, and would instead provide them only in a digital format, and also in the 900-series of "channels."[1] As now provided, the channels are viewable by subscribers to basic service without the need for a converter or any special equipment beyond the connection to the cable system. As a result of this action, Comcast will force local subscribers to pay more to receive PEG signals -- "the electronic parallel to the printed leaflet" -- than the subscribers are required to pay to receive other basic service programming, including standard local broadcast channels. Comcast's action will require subscribers such as Plaintiff Sharon Gillette to install extra equipment and to pay the accompanying extra fee in order to receive the PEG programming. It will also undermine the ability of the Township and the City to disseminate basic governmental programming to members of the public in the local community (and also, of course, affect the ability of the schools and members of the public to use the public and educational access channels). The actions are not unique to these Comcast subsidiaries and are being implemented uniformly statewide for Comcast cable systems.[2] Because this action violates federal law and regulations, as well as Defendants' obligations under their respective cable franchises, Plaintiffs have this date filed a Complaint for Declaratory and Injunctive Relief with this Court.

However, if Comcast is permitted to change the *status quo* as it plans to do on January 15, while this Court considers the Complaint, Plaintiffs, and their ability to speak and to receive

---

[1] Complaint, **Exhs. E-G.** Both Defendants are subsidiaries of the same ultimate parent, and actions taken by them or by their parent collectively are referred to as the actions of "Comcast."

[2] Complaint, **Exh. E.**

information, will be irreparably harmed. Plaintiffs file this Memorandum of Law in support of their *Motion for a Temporary Restraining Order* and their separately filed *Motion for a Preliminary Injunction* to enjoin Comcast from altering the format of the PEG channels and moving the PEG channels from their current location while this matter is pending.

## ARGUMENT

### I. COMCAST PLANS TO MAKE PEG CHANNELS MORE EXPENSIVE AND LESS ACCESSIBLE ON JANUARY 15, 2008.

A. History of PEG Channels in the Township and the City.

Under its franchise with the Township, Comcast III is required to provide at least eight PEG channels: one for governmental use; one for public use; four for use by the public school districts and community colleges serving the Township; and two for use by the state university system. Franchise, ¶ 14-16.[3] Comcast III has designated Channels 21-24 and 27-31 as PEG Channels for the Township. Sections 14-16 of the franchise require Comcast III to carry these channels on the basic service tier – the service tier that includes standard broadcast channels. The Township Code also requires Comcast III to comply with federal law and FCC regulations applicable to the carriage of the channels. Township Code § 70-91.[4] Finally, as a matter of law the company must have affirmative authority from the locality to treat PEG channels in a discriminatory manner.[5] Nothing in the franchise authorizes Comcast III to treat PEG channels differently than broadcast channels, and nothing authorizes Comcast III to carry the channels on any tier other than the basic service tier.

Likewise, the Dearborn cable franchise at Section 3.4 requires Comcast South to comply

---

[3] Complaint, **Exh. A**.

[4] Complaint, **Exh. B**.

[5] *See, infra* pp. 7-10.

with "all laws and regulations of the State and Federal government or any administrative agency." The franchise requires Comcast South to provide six channels for PEG use, and makes it clear that once the channels capacity is assigned, it may not to be changed unilaterally by Comcast. Section 3.12 provides, for example, that channel locations "shall be by mutual agreement of the City" and the franchisee.[6]

Currently, subscribers in both communities are able to receive the PEG channels in the same way that they receive standard broadcast channels. Subscribers are not required to obtain or pay for any extra equipment to receive the PEG channels. Nor has Comcast imposed any additional charge to view the PEG channels. Nor have the PEG signals been located in a segment of the spectrum that would make it difficult for subscribers to locate them or view them.

In contrast, some signals carried on Comcast cable systems can only be received if a subscriber leases or purchases a converter box. For example, a "premium" service, such as HBO, can only be viewed if a subscriber has a converter box. Comcast's interactive programming guide and many of its digital services can only be used if a subscriber leases a box from Comcast, at a substantial additional monthly charge per television set. A separate box is required for each set where the subscriber wishes to receive service, and there is a corresponding increase in the monthly charges owed to Comcast for the boxes.[7]

B. Comcast's Planned Actions.

On or about November 15, 2007, Comcast III advised the Township that as of January 15, 2008 it intends to carry the PEG channels now being provided in the Township only on what

---

[6] Complaint, **Exh. C**.

[7] **Attachment 1,** Affidavit of Andrew Afflerbach, ¶ 5

it calls "channels" 902-906, 911-913 and 916 and to provide those "channels" only in a digital format.[8] A subscriber notice advised Comcast III customers that they could only continue to receive PEG programming "by acquiring a digital converter, digital service, or compatible equipment."[9] Dearborn was sent almost identical notices with respect to its PEG channels.[10] As a result, among other things, in order to view the PEG channels, many subscribers who now receive basic service without a converter box will need to obtain a converter box for each television set on which they seek to view the PEG channels. A converter box will not be required to receive standard broadcast channels on the basic service tier, or other basic service channels such as TBS. Moreover, the PEG channels will no longer be as easily accessible either through the standard program guide or by "channel surfing."[11] This is particularly important as PEG programmers do not have the resources available to traditional broadcasters to advertise the content of the programming being carried at any particular time.[12]

Comcast will have segregated the PEG programming, providing the signals so that they will cost more to receive and will be less accessible to subscribers. What is now a single, basic tier that includes standard broadcast channels and PEG channels will be two tiers, one consisting of channels that can be received on any cable-ready television set without additional expense beyond the basic service fee, and easily accessible to all; and another including the PEG signals. Subscribers, including Plaintiff Sharon Gillette, will have to pay substantially more to Comcast,

---

[8] Complaint, **Exh. E**. Subsequently, Comcast announced that location 911 would not be used, and 915 would be used instead.

[9] Complaint, **Exh. F**.

[10] Complaint, **Exh. G**.

[11] **Attachment 1,** Affidavit of Andrew Afflerbach, ¶¶ 4-8.

[12] **Attachment 2**, Affidavit of Deborah Guthrie, ¶ 7.

or obtain special equipment in order to receive the PEG signals that Comcast is obligated to deliver.[13]

As a result, many subscribers will be denied access to basic public information as well as the opportunity to view and participate in the political process in action through coverage of meetings and events. The Township's award-winning Channel 21, for example, provides unique and extensive coverage of local elections. Likewise, educational and public channels in the Township provide vital information and provide the public, students, and teachers unique opportunities as both producers and recipients of programming.[14] The same is true in Dearborn, and there is an additional concern: in both communities, the government access channel is used to distribute to transmit time-sensitive information, such as snow emergency declarations, and information about other emergencies.[15] At a time and in a season when public safety concerns are obviously high, Comcast will make it more difficult for public safety officials to communicate with the public.

C. Efforts to Resolve the Dispute.

Michigan cities, including Plaintiffs, took immediate action to discuss the proposed change with Comcast. For example, on November 29, Township Supervisor Susan McGillicuddy wrote Comcast III noting that the move "will force many of our residents," including seniors "to obtain a converter box," and asking Comcast III to identify any place in its franchise with the Township that authorized it to act as it planned.[16] The Township requested

---

[13] **Attachment 3**, Affidavit of Sharon Gillette.

[14] **Attachment 2**, Affidavit of Deborah Guthrie, ¶¶ 6-8, 10-12.

[15] Complaint, & 28; **Attachment 2**, Affidavit of Deborah Guthrie, & 6.

[16] Complaint, **Exh. I**.

that Comcast not proceed with the plan. On December 4, Comcast III responded, making it clear that it intended to move forward with its plan; accordingly on December 18, 2008, the Township provided a formal notice to Comcast III that its actions violated the franchise and applicable law and gave Comcast the opportunity to cure. The company did not respond until after the close of business on January 8, 2008, and refused to reconsider its proposed actions.[17]

Meanwhile, Michigan cities including Plaintiffs, via their membership in Michigan chapter of the National Association of Telecommunications Officers and Advisors ("MI-NATOA"), submitted a series of questions to Comcast regarding the proposed change. On December 7, 2007, Comcast responded to MI-NATOA, again refusing to reconsider the proposed move. The letter emphasized that (a) "Michigan is the first state" in which Comcast is taking the steps described above; (b) other basic service channels are not being digitized and moved; and (c) it is not clear when, if ever, other channels will be digitized and moved. Comcast also explained the grounds on which it claimed the right to move the channels – which amounted to the assertion that it can move the channels because nothing expressly prevents it from doing so. The company did not explain or show why the move is necessary.[18]

Finally, Rep. John Dingell wrote to Comcast on December 21, 2007, notifying the company that its "intent to charge consumers as much as an additional $4.20 a month per television set to receive PEG channels is plainly inconsistent with Congressional intent that PEG channels be made available "at the lowest reasonable rate." Rep. Dingell gave Comcast until January 7, 2008 to address the issue. Comcast responded that it intended to move the PEG

---

[17] Complaint, **Exhs. J-L**.

[18] Complaint, **Exh. H**.

channels effective January 15, 2008.[19] The Plaintiffs' Complaint and Motions followed.

## II. PRELIMINARY INJUNCTIVE RELIEF IS APPROPRIATE TO PREVENT COMCAST FROM ALTERING THE STATUS QUO.

A district court exercising discretion with respect to a motion for a temporary restraining order and preliminary injunction must consider four factors:

(1) whether the movant has a strong likelihood of success on the merits;

(2) whether the movant would suffer irreparable injury without the injunction;

(3) whether issuance of the injunction would cause substantial harm to others; and

(4) whether the public interest would be served by issuance of the injunction.

*Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir.1998); *Summit County Democratic Central and Executive Committee v. Blackwell*, 388 F.3d 547, 550-551 (6th Cir. 2004). In this circuit, the four considerations "are factors to be balanced, not prerequisites that must be met." *Mascio v. Public Employees Retirement System of Ohio*, 160 F.3d 310, 312 -313 (6th Cir. 1998); *see also Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.*, 753 F.2d 1354, 1356 (6th Cir. 1985) ("four factors do not establish a rigid and comprehensive test for determining the appropriateness of preliminary injunctive relief. Instead, the district court must engage in a realistic appraisal of all the traditional factors weighed by a court of equity.").

### A. Plaintiffs Have a Strong Likelihood of Success on the Merits.

Comcast III argues in its December 4 letter, Complaint, **Exh. J** that it can proceed with its plan because nothing directly prohibits it from doing so. That contention shows that Comcast

---

[19] Complaint, **Exhs. M-N**.

fundamentally misunderstands franchise law and nature of PEG channels. It is black letter law that franchises "are to be construed strictly against the grantee and liberally in favor of the public." McQuillin, *Municipal Corporations*, Section 34:62; *see City of Benton Harbor v. Michigan Fuel & Light Co.*, 250 Mich. 614, 622 (1930) ("We are mindful of the rule of construction applicable to grants of this character. They should be construed most strongly against the grantee and in favor of the public."). Hence the proper question is whether anything *authorizes* Comcast to move, bundle, and provide PEG channels as it sees fit.

So understood, Comcast's planned actions violate federal laws and regulations in at least three ways. *First,* Comcast is violating its obligation to deliver PEG channels to subscribers without unnecessary interference. *Second,* federal law requires Comcast to provide PEG channels as part of the basic service tier, and further prohibits Comcast from taking any action that would evade this obligation. Comcast's segregation and placement of the PEG programming in what Comcast calls the 900-series of digital channels violates this obligation. *Third,* Comcast failed to provide required notice to subscribers. *Fourth,* Comcast is violating requirements that it provide PEG channels "in the clear," so that subscribers can receive them without unnecessary equipment.

In addition, Comcast III's proposed actions violate its franchise with the Township, which requires that PEG channels be provided as part of the basic service tier, and which requires compliance with federal laws and regulations, and Comcast South's actions likewise violate its franchise with the City, which contains similar requirements.

**1. The planned actions violate Defendants' obligation to deliver PEG channels.**

When it adopted the Cable Act in 1984, Congress emphasized the importance of PEG channels to the advancement of basic First Amendment principles:

> The development of cable television, with its abundance of channels, can provide the public and program providers the meaningful access that, up until now, has been difficult to obtain. A requirement of reasonable third-party access to cable systems will mean a wide diversity of information sources for the public – the fundamental goal of the First Amendment – without the need to regulate the content of programming provided over cable.

H.R. Rep. No. 98-934, 1984 U.S.C.C.A.N. at 4667 (1984). Congress noted that the PEG channels would

> provide groups and individuals who generally have not had access to the electronic media with the opportunity to become sources of information in the electronic marketplace of ideas. PEG channels also contribute to an informed citizenry by bringing local schools into the home, and by showing the public local government at work.

*Id.* Accordingly, the 1984 Report stressed that: "Local governments, school systems, and community groups, for instance, will have *ample opportunity to reach the public* under H.R. 4103's grant of authority to cities to require public, educational, and governmental (PEG) access channels." *Id.* at 4656 (emphasis added). The Report further stressed that "[p]ublic access channels available under H.R. 4103 *would be available to all, poor and wealthy alike . . .*," *Id.* at 4673 (emphasis added). When Congress amended the Cable Act in 1992, the House again emphasized the importance of the PEG channels, and reiterated that Congress intended for the channels to be easily viewable throughout a community:

> PEG programming is delivered on channels set aside for community use in many cable systems, and *these channels are available to all community members* on a nondiscriminatory basis, usually without charge....PEG channels serve a substantial and compelling government interest in diversity, a free market of ideas, and an informed and well-educated citizenry....Because of the interests served by PEG channels, the Committee believes that *it is appropriate that such channels be available to all cable subscribers on the basic service tier and at the lowest reasonable rate.*

H.R. Rep. No. 102-628 at 85 (1992) (emphasis added). Even members of the Committee who objected to the bill as reported agreed that it was essential that PEG access channels be available

to all subscribers: "Making over-the-air broadcast and PEG access channels available on a separate [basic service] tier promotes the time-honored principle of localism." *Id.* at 183.

As discussed *supra* pp. 1-2, PEG channels are under the control of the community, not the operator. Comcast's obligation with respect to PEG channels is thus one of delivery. Or, as the FCC put it after reviewing the 1992 legislative history, "[g]iven this clear congressional direction and the evidence of the importance attached to PEG channels, we require a cable operator to carry PEG channels on the basic tier *unless the franchising agreement explicitly permits carriage on another tier*." *In the Matter of Implementation of Section of the Cable Television Consumer Protection and Competition Act of 1992 Rate Regulation,* Report and Order and Further Notice of Proposed Rulemaking, 8 F.C.C.R. 5631, 5737-38, MM Docket No. 92–266 (1993)(emphasis supplied).[20] A cable operator has no more inherent right to require subscribers to obtain special and unnecessary equipment to receive PEG channels, or to make it more difficult to receive PEG channels than other channels delivered to any class of subscribers than a telephone company would have to require customers to purchase a special phone to call City Hall, or to dial an extra set of numbers.

Comcast's planned actions are based on an assumption of control over PEG channels that Defendants do not possess. Here there is segregation, discrimination, and undeniably an effort to treat PEG differently than other standard local broadcast channels. That in itself is a violation of the Cable Act. If Comcast can move and bundle the delivery of PEG channels with the sale or lease of its digital converter boxes, what is to stop the company from bundling the delivery of the channels with even more expensive equipment and services in the future, or to offer them only

---

[20] *See also,* 47 U.S.C. § 541(b)(3)(D)(comparing PEG obligations to carriage obligations for telecommunications services).

for an extra charge? Under the Cable Act, Defendants lacks such power, and must instead make the channels accessible to all.

**2. Defendants will not provide the PEG channels as part of the basic service tier as required by 47 U.S.C. § 543(b).**

Based on the dual concerns of ensuring that basic services be available at reasonable rates, and that the channels be accessible to all, the House adopted language (included in the final legislation) that "requires cable operators to offer a basic service tier, consisting, at a minimum, of all broadcast signals carried on the cable system and public, educational, and governmental (PEG) access channels." H.R. Rep. No. 102-628 at 26-27.

The statute accordingly provides that every cable operator must "provide its subscribers a separately available basic service tier" that contains, at a minimum, any PEG programming "required by the franchise of the cable system to be provided to subscribers." 47 U.S.C. § 543(b). To be sure – as is apparent from Comcast III's December 4 letter – Defendants have told regulators and legislators that even after January 15, it will be providing the PEG signals as part of basic service.[21] However, the concept of a tier at least implies that services on the tier are available on the same, or roughly the same basis. A "service tier" is defined by the Cable Act as a "*category* of cable service or other services provided by a cable operator and for which a *separate rate* is charged by the cable operator." 47 U.S.C. § 522(17) (emphasis added).[22] If

---

[21] However, subscriber complaints received by the Township suggest that the same message is not being conveyed to subscribers. **Attachment 2,** Affidavit of Deborah Guthrie, ¶ 10.

[22] *Statistical Report On Average Rates For Basic Service, Cable Programming Service, And Equipment*, 21 F.C.C.R. 15087, MM Docket No. 92-266 (2006) (noting that the term "service tier" generally refers to a category of cable service or other services provided by a cable operator and for which a separate rate is charged by the cable operator); *see, In The Matter Of Annual Assessment Of The Status Of Competition In The Market For The Delivery of Video Programming*, 21 F.C.C.R. 2503, MB Docket No. 05-255 (2006)(operator required to provide

Defendants take the proposed actions, the PEG signals would no longer be available to subscribers on the same basis as standard broadcast channels. Instead, because PEG signals would require additional equipment in order to be viewed, Comcast would charge subscribers additional fees for PEG channels that Comcast would not charge subscribers for standard broadcast channels or other channels on the basic service tier such as TBS. Two channels are not on the same "tier" if one requires payment of significant additional fees, and the other does not. Comcast's proposed actions would treat PEG channels so differently from standard broadcast channels that no matter how Comcast characterizes them, the PEG signals would no longer be part of the basic tier of service, as required by the franchise and by federal law.

**3. Defendants have failed to provide required notice of the proposed change.**

Defendants are required to provide accurate notice to subscribers of any proposed change in channel location to subscribers at least thirty days prior to the change under the FCC's minimum customer service standards, 47 C.F.R. § 76.309(c)(3)(i)(B). Under FCC rules, the Township and the City are, respectively, responsible for enforcing the regulation. The notice provided to subscribers was deficient. Subscribers were told that PEG signals could now be found in what Comcast calls the 900-series of "channels." In fact, however, only subscribers that have a converter or card capable of "reading" a special signal transmitted by Defendants will be able to find the signals at those locations; on QAM tuners, which Defendants say can view the PEG signals without a converter, the signals would appear at entirely different locations, if they appear at all. Thus, the notice failed to give complete or accurate notice of the PEG change, and

---

basic service tier including PEG); *In the Matter of Social Contract for Comcast Cable Communications, Inc.*, 13 F.C.C.R. 3612 (1997) (unnecessary to protect against movement of PEG channels from basic because rules and statute require maintenance of PEG on basic tier).

failed to satisfy minimum requirements of law.[23]

**4. Comcast is failing to ensure that all basic service channels are available without the need for unnecessary equipment as required by 47 C.F.R. § 76.630 and 47 U.S.C. § 544A.**

Even if Defendants were providing the PEG channels on the basic service tier, the planned actions would run afoul of 47 U.S.C. § 544A and 47 C.F.R. § 76.630.

Section 544A is designed, *inter alia*, to prevent operators from requiring consumers to obtain unnecessary equipment that may interfere with the operation of consumer electronic equipment. 47 C.F.R. § 76.630 specifically prohibits scrambling or otherwise encrypting signals on the basic service tier. The FCC Order prohibiting scrambling or encryption stated:

> Many parties representing cable interests argue that, at a minimum, we should exempt from the scrambling prohibition all channels carried on the basic tier beyond those required to be carried there....We...conclude that the prohibition on scrambling of basic signals should include both signals carried on the basic tier and any other signals that cable operators may choose to add to that tier. **This rule will significantly advance compatibility by ensuring that all subscribers are able to receive basic tier signals "in the clear" and that basic-only subscribers will not need set-top devices at all....**

*In the Matter of Implementation of Section 17 of the Cable Television Consumer Protection Act of 1992*, First Report and Order, 9 F.C.C.R. 1981, 1991 (1994) (emphasis added). The FCC thus endorsed the notion that channels on the basic service tier must be offered in a manner that minimizes the need for unnecessary equipment.[24] Under the Act, this is mandatory:

---

[23] **Attachment 1,** Affidavit of Andrew Afflerbach, ¶¶ 9-10; **Attachment 2,** Affidavit of Deborah Guthrie, ¶ 9.

[24] It is certainly the case that the digital signals can be provided in a manner such that they are receivable by advanced televisions with QAM tuners. This is what Comcast says it will do in its letters. Plaintiffs have reason to believe that Comcast is not providing the PEG signals in the manner it claims. **Attachment 2,** Affidavit of Deborah Guthrie, ¶ 9. However, the Township's motion at this time does not depend on whether the signals are "scrambled or encrypted" within

47 U.S.C. § 544A(c)(2)(B)(ii) requires operators "to the extent technically and economically feasible, to offer subscribers the option of having all other channels delivered directly to the subscribers' television receivers...without passing through the converter box." Providing the PEG signals in a way that *requires* a converter box is inconsistent with the FCC's rules.

**5. The proposed actions violate Defendants' franchises.**

As noted above, the Township and Dearborn franchises require Defendants to comply with federal laws and regulations, and include requirements for carriage of the channels. The violations of federal law, described above, are also violations of each franchise.

There is nothing in Michigan law that renders these provisions unenforceable or irrelevant, as Comcast's responses to the Township have claimed. To the contrary, Michigan law specifically permits localities to require compliance with federal laws and regulations. M.C.L. 484.3302(3)(h). Nor could Michigan law do otherwise. The Cable Act provides specifically that "a franchising authority may enforce any requirement" in a franchise regarding the provision of PEG channels. 47 U.S.C. § 531(c). Hence, a state law that purported to prevent enforcement of PEG requirements in a local franchise would necessarily be preempted.

B. Plaintiffs Would Suffer Irreparable Injury Without the Temporary Restraining Order and the Preliminary Injunction.

The Township actively programs the government channel, Channel 21, HOM-TV. HOM-TV is an award-winning government access station that cablecasts out of the Meridian Township Municipal Building. Among other things, it cablecasts gavel to gavel coverage of

---

the meaning of 47 C.F.R. § 76.630. Rather, the Township contends that the regulation protects subscribers against being required to obtain unnecessary equipment to receive PEG on a service tier, as indicated in the FCC *Order*.

township meetings and also produces programs about the community, *see supra*, p. 5.

After Comcast's planned action, the Township's ability to use HOM-TV as a communications tool would be substantially and adversely affected on an immediate basis. The Township would immediately lose a number of viewers of HOM-TV because the viewers: (a) are unable to receive HOM-TV Channel 21 on their televisions; (b) cannot afford to pay the higher cost of HOM-TV Channel 21 vis-à-vis standard broadcast channels; or (c) are unable to locate the PEG signals after they are moved. In addition, HOM-TV Channel 21 will no longer be as easily accessible to subscribers either through the standard program guide or by "channel surfing." This is particularly important because the Township lacks the resources available to traditional broadcasters to advertise the content of the programming being carried on HOM-TV Channel 21. The same is true for Plaintiff Dearborn. In addition, the ability to convey emergency messages will be impaired.

The City and Township, as franchising authorities, also have an interest in ensuring that the educational and public PEG programming is available to the community as Congress intended. That interest is significant, and is irreparably harmed if the channels are moved: among other things, the movement would significantly disrupt use of the educational access channels by the school districts. The disruption of speech, and the attendant loss of access to subscribers, is immediate and irreparable.[25] The harm to subscribers and to speakers cannot be remedied later through a damages action – Comcast has never claimed otherwise.

C. <u>The Issuance of the Temporary Restraining Order and the Preliminary Injunction</u>

---

[25] See, generally, **Attachment 2**, Affidavit of Deborah Guthrie; **Attachment 3**, Affidavit of Sharon Gillette.

Would Not Cause Substantial Harm to Comcast or to Others.

There is no significant harm to Defendants from maintaining the status quo. Comcast provides the PEG channels as part of the basic service tier in most of the country, and the maintenance of the status quo in the Township would merely continue that practice.[26] There is no apparent technical barrier to maintaining the status quo.[27] Moreover, reversing the change later would cause far more confusion and than delaying it now. Subscribers would be benefited by the stay, as suggested above.

D. The Public Interest Would Be Served By Issuance of the Temporary Restraining Order and the Preliminary Injunction.

Maintaining the status quo will serve the public by maintaining access to vital public information, by ensuring subscribers are not unjustly charged for equipment, and by avoiding the burden required to obtain and configure a box for each television. As Rep. Dingell points out, it would advance the public interest that Congress sought to protect through the Cable Act.

**CONCLUSION**

This Court should grant Plaintiffs' Motions and enter a temporary restraining order and a preliminary injunction restraining Defendants from altering the format of the channels and moving PEG channels from their current location while this matter is pending.

---

[26] Complaint, **Exh. H**; Attachment **1,** Affidavit of Andrew Afflerbach, ¶ 11.

[27] *Id.*

Respectfully submitted,

KITCH DRUTCHAS WAGNER
VALITUTTI & SHERBROOK

By: ______________________

Debra A. Walling (P37067)
William H. Irving (P39174)
Counsel for City of Dearborn
13615 Michigan Avenue
Dearborn, MI 48126-3586
(313) 943-2035
birving@ci.dearborn.mi.us

By: ______________________

Michael J. Watza (P38726)
Cheryl Verran (P71237)
Attorneys for Plaintiff
One Woodward Avenue, Suite 2400
Detroit, Michigan 48226-5485

Dated: January 10, 2008

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARTER TOWNSHIP OF MERIDIAN,
a Municipal corporation, and
CITY OF DEARBORN,
a Municipal corporation, and
SHARON GILLETTE, an individual

Case No.: ____________

Hon. ______________
Magistrate ____________

Plaintiffs,

v.

COMCAST OF MICHIGAN III, INC.,
a Delaware corporation, et al.,

Defendants.

---

**AFFIDAVIT OF DEBORAH GUTHRIE**

STATE OF MICHIGAN )
)SS
COUNTY OF INGHAM )

I, DEBORAH GUTHRIE, being first duly sworn, deposes and states that:

1. I am Cable Coordinator for the Charter Township of Meridian. I reside at 3979 Dayspring Ct., Okemos, MI 48864. My telephone number is (517) 332-3799.

2. I have worked in the television industry for 12 years from a camera grip to reporter to producer to Production Manger to Intern Coordinator. As Cable Coordinator for the Township, I am responsible for directing and overseeing the operations of HOM-TV Channel 21, the government access channel for Meridian Township. I am also responsible for providing staff

KITCH DRUTCHAS WAGNER VALITUTTI & SHERBROOK
(313) 965-7900

assistance to the Cable Communications Commission and I serve as a liaison between the cable company and the Commission. The Commission, among other things, is responsible for reviewing the performance of cable operators in the community and making recommendations to the governing body of the Township with respect to enforcement of franchise obligations. I am also responsible for receiving and investigating complaints regarding cable in Meridian Township.

2. I have been Cable Coordinator since January, 2007, and have worked in various capacities for HOM-TV Channel 21 since 1996.

3. I have separately reviewed and verified the factual statements in the Complaint against Comcast of Michigan III, Inc. with respect to Meridian Township and I will not repeat those statements in this affidavit. This affidavit will provide additional information about HOM-TV Channel 21 and some of the work we have performed and information we have received since the announcement that Comcast would cease providing the access channels at their current location, shift those channels to digital only (so that they cannot be received by a common, cable-ready analog television), and identify PEG programming as being carried on what Comcast describes as the 900-series of channels on the cable system.

4. HOM-TV Channel 21 has received several national, regional, and local awards for its programming, including 23 first place national awards for overall excellence in government programming, election coverage, local news, and specialty programs as recognized by NATOA and ACM. It was most recently awarded a national award for its coverage of local election debates. Without our coverage of such local debates, it is unlikely that the debates would be televised. Hence, our HOM-TV Channel 21 provides a very valuable way for citizens

KITCH DRUTCHAS WAGNER VALITUTTI & SHERBROOK
ONE WOODWARD AVENUE, SUITE 2400
DETROIT, MI 48226-5485
(313) 965-7900

of all ages and income levels to participate in the electoral process. This coverage will of course be of particular importance during this year.

5. This sort of coverage is typical of our channel. The goals of HOM-TV Channel 21 are to:

- provide citizens increased access to Township meetings through live and recorded television programming available on Comcast cable channel 21 (the channel is also available on the Internet via video streaming on the Township Web page, but viewing this video requires high speed Internet access);
- cablecast live or taped programs for at least eight hours per day, seven days per week;
- increase information that is available to the Township electorate about political issues, candidates and elections;
- produce and transmit other informative television programs of interest and value, not provided or available by other sources, which may improve the quality of community life and viewership of the cable channel;.
- make available opportunities for citizen involvement and interaction; and
- maintain high standards of professionalism and quality programming.

KITCH DRUTCHAS WAGNER VALITUTTI & SHERBROOK
ONE WOODWARD AVENUE, SUITE 2400
DETROIT, MI 48226-5485
(313) 965-7900

6. Consistent with these goals, Channel 21 is programmed with a mix of original taped, live and repeat programming, along with a community information bulletin board. The community bulletin board was recently discussed by the board as an avenue for them to send

public notices rather than the expensive cost of print media. The bulletin board posts information about road closures, flooding, water main breaks, canceled meetings, etc. The channel is heavily programmed. In the last quarter of 2007, for example, we produced 110 new original programs, and in addition covered meetings of the Township Board, the Zoning Commission, the Planning Commission, the Environmental Commission and the Parks Commission. That number of original programs will double as the average high election season produces approximately 50 additional programs.

7. Channel identity and accessibility are very important to us because we do not have the promotional budget of a broadcast station, and because detailed information about the programming we are carrying does not appear in programming guides. For that reason, and others, the current channel location is very important to us.

8. It would be inconsistent with our goals and the township boards goals and it would substantially hamper our ability to communicate if subscribers must pay additional fees or charges in order to receive HOM-TV Channel 21 programming, or if it is difficult to find HOM-TV Channel 21 programming by channel surfing. Comcast's actions would have both of these results. I say this based on my experience in the field, but also based on complaints that we have received regarding Comcast's plan to deliver HOM-TV Channel 21 only in digital and in what Comcast identifies as channel 915. The impact would be immediate.

9. To determine how difficult it would be for a consumer to find HOM-TV Channel 21, I recently directed my staff to perform a test. According to Comcast, a consumer with a digital television with a QAM tuner should be able to view HOM-TV Channel 21 without a converter. Also according to Comcast, the channel is now being shown on Channel 21, and also at position 915. *With* a converter on an analog TV, we could view the HOM-TV signal at

KITCH DRUTCHAS WAGNER VALITUTTI & SHERBROOK
(313) 965-7900

position 915. But *without* the converter on the QAM digital TV, there was no signal when we directed the TV to tune to 915, or any 900-series location. This is contrary to Comcast's claim. We could not "channel surf" from other basic channels (which we could receive) to the 900-series. At the very least, this indicates that unless a subscriber pays an extra amount to Comcast, the subscriber will find it very difficult to locate our programming and may find it impossible to receive.

10. We have received a number of complaints from citizens about the proposed change, and from other community institutions. The school district and students from the school district attested that the proposed move would harm ongoing academic programs that rely on the educational access channel in our community. We have been told that many public and educational programs depend on volunteer producers. When the channels are accessible to fewer people, program production will be discouraged, because volunteers will see less value to their participation.

11. At least one customer has indicated to us that he was told that in order to obtain the PEG channels, he would have to subscribe to buy additional services, and could not just continue to purchase the basic service tier.

12. These complaints indicate that if Comcast is permitted to proceed with the planned change, the Township will be harmed as a programmer, and viewers will also be either deprived of information that is of great importance to them, or forced to pay significant additional fees. In addition, subscribers complain that in order to receive the channels, they will be required to schedule service appointments and go through the inconvenience of installation of a converter box.

KITCH DRUTCHAS WAGNER VALITUTTI & SHERBROOK
ONE WOODWARD AVENUE, SUITE 2400
DETROIT, MI 48226-5485
(313) 965-7900

Further, Affiant sayeth not.

DEBORAH GUTHRIE

Subscribed and sworn to before me this 10th day of January, 2008.

Notary Public

DET02\1222299.01

SANDRA K. OTTO
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires Oct 1, 2010
Acting in the County of Ingham

KITCH DRUTCHAS WAGNER VALITUTTI & SHERBROOK
ONE WOODWARD AVENUE, SUITE 2400
DETROIT, MI 48226-5485
(313) 965-7900

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARTER TOWNSHIP OF MERIDIAN,
a Municipal corporation, and
CITY OF DEARBORN,
a Municipal corporation, and
SHARON GILLETTE,
an individual,

Plaintiffs,

vs.

COMCAST OF MICHIGAN III, INC.,
a Delaware corporation, and
COMCAST OF THE SOUTH, INC.,
a Colorado Corporation,

Defendants.

Case No.: ___________

Hon. ________________
Magistrate ___________

MICHAEL J. WATZA (P38726)
CHERYL VERRAN (P71237)
Counsel for Plaintiffs
Kitch Drutchas Wagner Valitutti & Sherbrook
One Woodward Ave., 24th Floor
Detroit, Michigan 48226
(313) 965-7986
(248) 921 3888
mike.watza@kitch.com

WILLIAM H. IRVING (P39174)
Corporate Counsel
City of Dearborn
13615 Michigan Avenue
Dearborn, MI 48126-3586
(313) 943-2035
birving@ci.dearborn.mi.us

**AFFIDAVIT OF SHARON GILLETTE**

Kitch Drutchas Wagner Valitutti & Sherbrook
One Woodward Avenue, Suite 2400
Detroit, MI 48226 5485
(313) 965-7900

STATE OF MICHIGAN )
)SS

COUNTY OF INGHAM )

I, SHARON GILLETTE, being first duly sworn, depose and state that:

1. I am a 20 year resident of 1375 Haslett Road, Haslett, MI.

2. I have been employed as a Realtor at Remax for 12 years;

3. I am a basic cable subscriber of Comcast or its predecessors since at least 2000 and my monthly cable bill averages $17.00 - $18.00.

4. I have no digital converter box and choose not to spend additional money to purchase one.

5. I called Comcast January 9, 2008 to inquire about obtaining a digital converter so I could continue receiving PEG channels on and after January 15, 2008. I was told I would need to rent a converter box for each of my 3 televisions at a cost of $4.20 per converter, per month. I was also told an installation charger of $34.95 would be charged.

6. I watch ABC, NBC, CBS, WKAR, HOM-TV, Meridian Twp. Government and the Haslett School channels.

7. My grandchildren attend school in the Haslett School District and I watch their events on television, as well as in person.

8. Government Access channels are very important to me and are used by me to monitor township meetings. I am always impressed with the amount of and importance of the decision making process by local government and believe residents should and do use HOM-TV to monitor local government activity including elections. Moving the PEG channels to the digital tier will terminate my ability to watch PEG channels, as well as others in the community.

KITCH DRUTCHAS WAGNER VALITUTTI & SHERBROOK
ONE WOODWARD AVENUE SUITE 2400 DETROIT, MI 48226
(313) 965-7900

9. The increase in channels by Comcast would create a greater risk of inappropriate programming (scrambled or not).

Further, Affiant sayeth not.

SHARON GILLETTE

Subscribed and sworn to before me
this 10th day of January, 2008.

Notary Public
SANDRA K. OTTO
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires Oct. 1, 2010
Acting in the County of Ingham

KITCH DRUTCHAS
WAGNER VALITUTTI &
SHERBROOK
ONE WOODWARD AVENUE
SUITE 2400
DETROIT, MI 48226-5485
(313) 965-7900

DET02\1222310.01

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MERIDIAN CHARTER TWP.,
a Municipal corporation,
CITY OF DEARBORN,
a Municipal corporation,
and SHARON GILLETTE

Case No.: ___________

Hon. ________________
Magistrate ___________

Plaintiffs,

vs.

COMCAST OF MICHIGAN III, INC.,
a Delaware corporation, et al.,

Defendants.

---

**AFFIDAVIT OF ANDREW AFFLERBACH, PH.D, P.E.**

STATE OF MICHIGAN )
)SS
COUNTY OF __________ )

I, ANDREW AFFLERBACH, being first duly sworn, deposes and states that:

1. I am Chief Executive Officer and Director of Engineering for Columbia Telecommunications Corporation (CTC), with principal business offices at 10613 Concord Street, Kensington, MD 20895, telephone (301)-933-1488. I hold a Ph.D. in astronomy from the University of Wisconsin—Madison in 1996, and am a licensed Professional Engineer in the Commonwealth of Virginia. I specialize in system-level planning, design, and implementation of wide-area and local-area telecommunications and cable networks. As Director of Engineering, I oversee all engineering work performed by Columbia Telecommunications. Most pertinent to

this affidavit, I work for many local governments in evaluating cable system performance, including the performance of cable systems owned by subsidiaries of Comcast Corporation. I am familiar with how Comcast delivers public, educational and government access programming on many of its systems, and I am also familiar with many of the problems that would be created if (as I understand Comcast plans) PEG channels are delivered solely in a digital format and if Comcast maps its system so that a converter treats the signals as being in the 900-series of channels.

2. By way of background: consumer television sets, until recently, were only capable of receiving programming in an analog format. More recently, television manufacturers have been producing sets that can receive certain digital and analog television signals. All television sets manufactured after March 2007 and sold in the U.S. must be able to receive digital signals. As a result, while many homes now have at least one digital television set (50% of the public, according to the Consumer Electronics Association), another half do not, and even homes that have at least one digital set may have several sets that can only receive analog programming. In order for a consumer to receive a digital program on an analog set, that consumer must obtain a converter. While digital converters with limited capabilities are available from retail outlets, full-featured interactive converters are only available from cable operators at this point, and are typically leased for a monthly charge.

3. In this case, as I understand it, Comcast is now providing broadcast and PEG signals in the Township in an analog format. I also understand that as of January 15, 2008, Comcast will provide the PEG channels only in a digital format, while continuing to provide other basic service channels, including the broadcast channels, in an analog format.

Kitch Drutchas Wagner Valitutti & Sherbrook
(313) 965-7900

4. This will have several significant and adverse effects on members of the public who have only analog television sets, or that have multiple sets, some of which are analog and some of which are digital. These include the following.

5. Many subscribers who can now view the channels without a converter box will require a converter box. A separate box (with attendant costs and inconvenience) will be required for each television set in order to receive the PEG channels. By contrast, a converter box will not be required to receive the broadcast channels as long as Comcast continues to deliver them in an analog format. Converter boxes interfere with the functions and operation of many other consumer electronic devices, including the advanced features of many television sets (picture in picture, features, for example).

6. It will be more difficult for subscribers to find the channel by "channel surfing" given the location of the channels.

7. It will be difficult for subscribers to find the channels using the standard basic service programming guide (usually a rolling menu that lists, sequentially, the channels on the system and what is being carried upon them). In fact, for technical reasons explained below, the guide may be totally useless. Comcast also offers an interactive programming guide, but that guide typically is accessible only to subscribers who pay for a higher level of service.

8. I have reviewed the notice that Comcast sent to subscribers in Meridian Township. Comcast advises subscribers that the PEG channels will be on channels 902-906, 911-913 and 916. This will only be true for subscribers who have converters or cards that can decode a special signal that Comcast sends to the home. A converter or card that can read this signal will identify the PEG channels as being in the 900-series. A television without such a converter or card will identify the PEG programming as being on entirely different channels. In

Kitch Drutchas Wagner Valitutti & Sherbrook

letters sent to Meridian Township, Comcast has claimed, for example, that a customer with a digital TV set with a QAM tuner will be able to receive the PEG channels without any special equipment. In fact, customers with such digital TV sets will not be able to see the programming if they try to select the 900-series channels with their remotes. The PEG channels, to the extent that they are viewable at all, will be in an entirely different locations than the 900-series of channels. That obviously creates significant problems for channel identity. It also means that the notice does not identify accurately or completely where the PEG channels will be found, and that subscribers without special equipment will have no way to easily find the PEG channels.

9. There may be other, serious problems created by the proposed move, but I would require more information from Comcast before I could identify them.

10. The proposed changes are unusual. It is typical for operators to deliver PEG channels so that they are as accessible as broadcast channels.

11. As far as I am aware, as a technical matter, nothing prevents Comcast from providing the PEG channels in the format and in the locations where they are now provided. The fact that the channels are being provided in an analog format now means that Comcast has all the equipment and facilities in place to continue to provide those channels in that format. I am also familiar with Comcast systems around the country, and Comcast typically delivers PEG channels in an analog format, just as it is doing now in Meridian Township. There is no comparable shift of PEG programming to digital-only service, or to the 900-series of channels in Virginia or Maryland.

12. Many people are aware that, sometime next year, broadcast television stations will be required to broadcast their signals only in a digital format. What is often assumed is that cable systems will also shift entirely to digital signals. That is not the case. A cable operator

may choose to convert broadcast signals back to analog precisely so that cable subscribers can continue to receive cable services on their television sets without a converter. Material I have reviewed in connection with this case suggests that this is what Comcast may do. As a result, the problems outlined above are not necessarily short term problems, but are potentially long-term problems affecting the viewability, accessibility and cost associated with PEG channels.

13. While my statements are directed to Meridian Township, they would be equally true for other Michigan communities where Comcast or one of its subsidiaries is taking a similar action.

Further, Affiant sayeth not.

ANDREW AFFLERBACH

Subscribed and sworn to before me
this 10th day of January, 2008.

Notary Public

DEEPAK VERMA
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires March 5, 2011

DET02\1221667.01

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITY OF DEARBORN, a Municipal corporation,
CHARTER TWP. OF MERIDIAN,
a Municipal corporation, and
and SHARON GILLETTE, an Individual

Plaintiffs,

vs.

COMCAST OF MICHIGAN III, INC.,
a Delaware corporation, and COMCAST OF
THE SOUTH, INC., a Colorado corporation,

Defendants.

Case: 2:08-cv-10156
Judge: Roberts, Victoria A
Referral MJ: Scheer, Donald A
Filed: 01-11-2008 At 12:32 PM
CMP CITY OF DEARBORN, ET AL V. COMC
AST OF MI, ET AL (TAM)

---

MICHAEL J. WATZA (P38726)
CHERYL VERRAN (P71237)
Counsel for Plaintiffs
Kitch Drutchas Wagner Valitutti & Sherbrook
One Woodward Ave. Suite 2400
Detroit, Michigan 48226
(313) 965-7841
(248) 921 3888
mike.watza@kitch.com

WILLIAM H. IRVING (P39174)
DEBRA A. WALLING (P37067)
Counsel for City of Dearborn
13615 Michigan Avenue
Dearborn, MI 48126-3586
(313) 943-2035
birving@ci.dearborn.mi.us
dwalling@ci.dearborn.mi.us

---

**PROOF OF SERVICE**

STATE OF MICHIGAN )
)§
COUNTY OF WAYNE )

Isher Poindexter affirms and says that she is employed by Kitch Drutchas Wagner Valitutti & Sherbrook, and that on the 11th day of January, 2008, she served a copy of: (1) Motion for Preliminary Injunction, (2) Motion for Temporary Restraining Order, (3) Memorandum of Law in Support of Motions for Temporary Restraining Order and Preliminary Injunction and (4) Proof of Service upon:

Michael Ashton, 124 W. Allegan Street, Suite 1000, Lansing, Michigan 48933

by enclosing said papers in an envelope addressed to said person(s) at address(es) indicated above, and bearing proper postage, and causing same to be deposited in the United States mail receptacle located at One Woodward Avenue, Detroit, Michigan.

Isher Poindexter

Dated: January 11, 2008

DET02\1222408.01