UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITY OF DEARBORN, ET AL,

    Plaintiffs,

vs.                                                Case No: 08-10156
                                                Honorable Victoria A. Roberts

COMCAST OF MICHIGAN, ET AL,

    Defendants.

_____/

**OPINION AND ORDER**

**I.    INTRODUCTION**

Before the Court is Plaintiffs' Motion for a Temporary Restraining Order and Motion for Preliminary Injunction (Doc. #2).

**II.    BACKGROUND**

This matter involves a dispute over channels for public, educational and governmental use ("PEG channels"). Under the Cable Television Consumer Protection and Competition Act of 1992 ("Cable Act"), 47 U.S.C. § 521 *et seq.*, local government franchising authorities may require cable operators to designate channel capacity for PEG channels.

Defendants Comcast of Michigan III, Inc., and Comcast of the South, Inc. ("Defendants") entered into cable franchise agreements ("Agreements") with the Charter Township of Meridian and the City of Dearborn ("Municipal Plaintiffs"). These

1

Agreements require Defendants to provide PEG channels to customers in Meridian and Dearborn. The Municipal Plaintiffs have two distinct sets of PEG channels. Dearborn's franchise agreement requires that Defendants provide six PEG channels, while Meridian's franchise agreement requires eight. These channels are for public governmental use, for use by the public school districts and community colleges, and for the state university system.

Plaintiff Sharon Gillette ("Gillette"), a resident of Meridian, subscribes to limited basic cable service from Defendants. Her package currently provides access to PEG channels, in analog format, and does not require the use of a digital converter box.

But, on January 15, 2008, Defendants plan to convert the analog PEG channels into digital format. With this change, PEGs will no longer be accessible through Defendants' limited basic service package without a converter box. Current limited basic service tier subscribers, including Gillette, will only be able to view PEG channels if they lease or purchase a converter box, own a more advanced television that is equipped with a QAM tuner (a device that Defendants maintain allows viewing of the PEGs without a converter), or purchase a digital television. Limited basic service subscribers will no longer be able to see PEG channels on a common, cable-ready, analog television without a converter box.

There is no disagreement that digital delivery enhances the signal quality, reliability for programmers, and will make Defendants more competitive. There is also no disagreement that digitizing channels frees up broadband width on the cable system, which can be used to provide additional high-definition digital channels.

Importantly, converter boxes will not be necessary after January 15, 2008 for customers to continue viewing broadcast channels on the current limited basic service tier; they will remain analog. Defendants say they may create a basic service tier in which some channels are provided in digital and others in analog format. Plaintiffs don't disagree, but say the law requires that Defendants provide PEG channels on the same basis as broadcast channels.

To ease the pending transition, Defendants offer to provide one free digital converter box per household for a year. But, Defendants acknowledge a converter box is needed for every television on which a customer wishes to view PEG channels.

Customers living in Meridian and Dearborn will be affected by this change. Municipal Plaintiffs say the change will affect more than 50,000 households within their territory. Defendants say only 50% of its statewide customers subscribe to the limited basic tier of service, and estimate that the change will only affect 15,000 households.

Plaintiffs filed their motions on January 11, 2008, and claim Defendants' scheduled January 15, 2008 transition violates federal law and their Agreements for the following reasons:

1. Defendants' actions will no longer keep PEGs on par with the lowest commercial service (i.e., broadcast channels) available, because people who want to use PEGs must invest in additional equipment.

2. Low income and senior citizens -- those who can least afford it -- will not have the same access to PEG channels as Defendants' "high-end" customers.

3. Legislative history indicates a strong congressional intent that PEG channels be provided on a non-discriminatory basis.

4. Defendants failed to give proper notice under the Agreements of these changes.

5. The easement granted to Defendants does not give them control over PEG channels that they don't otherwise possess.

Defendants responded by arguing state law preempts any federal law Plaintiffs rely upon. Defendants also contend that local governments have no authority to dictate cable technology and channel placement, and that Plaintiffs interfere with their ability to be competitive.

A hearing was held on January 14, 2008.

## III. STANDARD OF REVIEW

This Court must determine whether Plaintiffs meet their burden for entitlement to equitable relief. When deciding motions for temporary restraining orders or for preliminary injunctions, a district court must consider: (1) the plaintiffs' likelihood of success on the merits; (2) whether the plaintiffs could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Summit County Democratic Cent. & Executive Co., v. Blackwell,* 388 F.3d 547, 550-51 (6th Cir. 2004); *see also Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998), *cert den.*, 526 U.S. 1087 (1999). No single factor is dispositive. The court must balance each factor to determine whether they weigh in favor of an injunction. *Blackwell,* 388 F.3d at 550-51.

For the following reasons, the Court finds that the majority of the factors weigh in favor of Plaintiffs. The Court **GRANTS** Plaintiffs' Motion for a Temporary Restraining

Order and Preliminary Injunction.

## IV. ANALYSIS

A. <u>Plaintiffs' Likelihood of Success on the Merits</u>

    1. <u>Defendants Are Obligated to Carry PEG Signals In Compliance With Federal Law, And That Law Is Not Preempted By State Law</u>

The Cable Act permits local governments to impose "designation" or "use" requirements on cable operators, with respect to channel capacity for PEGs. Section 531 states:

> **(a) Authority to establish requirements with respect to designation or use of channel capacity**
>
> A franchising authority *may* establish requirements in a franchise with respect to the designation or use of channel capacity for public, educational, or governmental use *only to the extent provided in this section.*
>
> **(b) Authority to require designation for public, educational, or governmental use**
>
> A franchising authority *may* in its request for proposals require as part of a franchise, and may require as part of a cable operator's proposal for a franchise renewal, subject to section 546 of this title, that channel capacity be designated for public, educational or governmental [PEG] use, and channel capacity on institutional networks be designated for educational or governmental use, and *may* require rules and procedures for the use of the channel capacity designated pursuant to this section.
>
> **(c) Enforcement authority**
>
> A franchising authority may enforce any requirement in any franchise regarding the providing or use of such channel capacity. Such enforcement authority includes the authority to enforce any provisions of the franchise for services, facilities, or equipment proposed by the cable operator which relate to public, educational, or governmental use of channel capacity, *whether or not required by the franchising authority* pursuant to subsection (b).
>
> \*\*\*\*

47 U.S.C. § 531 (emphasis added).

Defendants argue that Plaintiffs improperly apply the Cable Act to their planned actions.  Pointing to Michigan's Uniform Video Services Local Franchise Act of 2006 ("Franchise Act") M.C.L. § 484.3301 *et seq.*, which became effective January 1, 2007, Defendants maintain that relevant provisions of Plaintiffs' Agreements were invalidated by the Michigan Uniform Video Service Local Franchise Agreement ("Michigan Franchise Agreement").  Defendants say the only PEG requirement contained within the Michigan Franchise Agreement is that "new video service providers provide the same number of PEG channels as provided by the incumbent" before the effective date of the Franchise Act.  Defendants' Response at p. 7 (citing M.C.L.  § 484.3305(2)).  Plaintiffs respond that Michigan law is preempted by the Cable Act.

Plaintiffs are correct. Further, M.C.L. § 484.3302(3)(h) requires that "[t]he uniform video service local franchise agreement . . . include . . . a requirement that the provider agrees to comply with all valid and enforceable federal and state statutes and regulations."  And, contrary to Defendants' position, the requirements of § 531 and other federal statutory requirements, are not, "in addition to . . . the provisions of [the] uniform video service local franchise agreement . . . ."  By its terms,  the Michigan Franchise Agreement requires compliance "with all valid and enforceable federal and state statutes and regulations," and this compliance is not "additional" to anything in the franchise agreement.  M.C.L. § 484.3302(3)(h).

Plaintiffs are likely to prevail on this issue.

    2.    <u>PEG Channel Easement Does Not Prohibit Defendants' Actions</u>

The Supreme Court described "the requirement to reserve capacity for [PEG] channels [as] similar to the reservation of a public easement, or a dedication of land for streets and parks, as part of a municipality's approval of a subdivision of land." *Denver Area Educ. Telcoms. Consortium v. FCC*, 518 U.S. 727, 760-61 (1996). Even if PEG channels enjoy a public right of way, the Court is not convinced that their "public right of way," without more, prohibits their relocation or transition from analog to digital format. Plaintiffs are not likely to succeed on the merits of this claim.

### 3. Federal Law Does Not Prohibit Defendants From Offering Digital And Analog On the Basic Service Tier

Michigan law is silent on the placement of PEGs. In contrast, federal law explicitly requires that a cable operator provide PEGs on a basic service tier containing:

(1) a separately available basic service tier to which subscription is required for access to any other tier of service. Such basic service tier shall, at a minimum, consist of the following;

(2) Statutorily required broadcast channels;

(3) PEG channels;

(4) Statutorily required noncommercial educational television stations.

47 U.S.C. §543(b)(7).

Plaintiffs seem to rely on this and legislative history to support their argument that Defendants cannot differentiate between formats they use for PEGs and broadcast channels.

7

Plaintiffs cite legislative history supporting the importance of delivery of PEG channels. *See* H.R. Rep. No. 98-934, 1984 U.S.C.C.A.N. at 4667 (1984); H.R. Rep. No. 102-628 (1992); *see also* 8 FCC Rcd 5631, 5738 (FCC 1993) ("The House provision was enacted into law, so the House Report is relevant in determining congressional intent."). Pointedly, one portion of the House Report states "PEG . . . [channels] are available to all community members on a nondiscriminatory basis . . . . [T]he Committee believes that it is appropriate that such *channels be available to all cable subscribers on the basic service tier and at the lowest reasonable rate*." H.R. Rep. No. 102-628 at 85 (1992) (emphasis added). In addition, Plaintiffs note the FCC held that the Cable Act "require[s] a cable operator . . . to carry PEG channels on the basic tier unless the franchising authority explicitly permits carriage on another tier." *In the Matter of the Implementation of the Section of the Cable Television Consumer Protection and Competition Act of 1992 Rate Regulation,* 8 F.C.C.R. 5631, 5737-38.

Nothing in the statute or legislative history prohibits a cable provider from including both digital and analog channels on the basic service tier, or from providing PEGs in one format and broadcast channels in a different format. In fact, Plaintiffs concede this, and it is unlikely they will prevail on the merits of this claim.

   4. <u>Additional Equipment Costs May Be Unreasonable</u>

No additional equipment is currently needed to view PEGs at the basic service tier. After January 15, 2008, basic service tier customers who want to see PEGs must invest in additional equipment (beyond the one free converter box) because signals will only be digital and no longer available in analog. Defendants will impose additional

8

equipment costs on the basic service tier, and burden those basic service tier customers who want to view the PEG channels. Customers similarly situated – whose subscription says they are receiving the same service --will have different equipment costs imposed on them.

Federal law does not require that the basic service tier be the lowest priced tier. However, the total cost for the basic service tier (including service and equipment), must be reasonable, taking into account the cost of equipment for the basic service tier. 47 U.S.C. §§ 543(b)(3), 543(b)(1). The question becomes whether it is "reasonable" to burden some customers and not others, who subscribe to the same basic service tier, with the requirement to purchase additional equipment to access services they are similarly charged for. Defendants plan to charge a uniform rate for a basic service tier selection of channels, only a portion of which can be viewed without additional equipment at additional cost. Customers similarly situated -- whose subscription says they are receiving the same service -- will have different equipment costs imposed on them, and those who choose not to incur additional cost will pay for channels they are not able to access. These costs may be unreasonable, and may support a likelihood of success on the merits for Plaintiffs on this issue.

     5.    <u>Defendants May Have Provided Insufficient Notice</u>

Plaintiffs argue Defendants' notice of the proposed changes is defective under the FCC's minimum customer service standards. 47 C.F.R. 76.309(c)(3)(i)(B). It does not appear that this subsection Plaintiffs cite governs anything but "refunds," a concern not present here. *See* 47 C.F.R. 76.309(c)(3)(i)(B) ("(i) Refunds – Refund checks will be

9

issued promptly . . .").

Despite this shortcoming, the parties referenced additional bases for notice requirements in oral argument, and the expectation that notice be accurate is fundamental. Defendants gave notice within the required 30 days, but their notice was inaccurate. Contrary to the notice provided by Defendants, not all current limited basic service tier customers will be able to find the PEG channels in the 900 channel range in which Defendants intend to relocate them. Evidence presented demonstrates customers who have more advanced television sets and intend to use their equipment's QAM tuners to access PEGs, may not be able to locate the PEGs in the 900 channel range. Customers with third-party equipment may face the same difficulties.

Defendants say they could not accurately state where these channels will show up after the transition for those customers using third-party equipment. At the hearing it became clear that Defendants could have easily indicated where the great majority of these QAM channels would be after the transition.

Further, Plaintiffs state that the notices failed to inform customers of the free converter box availability or that installation would be provided at no charge. Defendants did not rebut this at the hearing.

It is likely Plaintiff will prevail on the merits of this claim. Defendants' customers in Dearborn and Meridian did not receive accurate and sufficient notice.

6. <u>Defendants Have Not Impermissibly Scrambled or Encrypted Signals</u>

The Federal Communications Commission rules state that "[c]able system operators shall not scramble or otherwise encrypt signals carried on the basic service

tier." 47 C.F.R. § 76.630(a). Plaintiffs say they have reason to doubt that Defendants are in compliance with this requirement. A recent test conducted by Plaintiffs did not confirm that advanced televisions with QAM capability could receive the PEG channels. In any event, Plaintiffs do not rely heavily upon the explicit requirements in 47 C.F.R. § 76.630(a). Instead, they read it in light of the FCC's commentary, which states that 47 C.F.R. § 76.630(a) supports "significantly advanc[ing] compatability by ensuring that all subscribers are able to receive basic tier signals 'in the clear' and that basic-only subscribers will not need set-top devices at all." *In the Matter of Implementation of Section 17 of the cable Television Consumer Protection Act of 1992*, First Report and Order, 9 F.C.C.R. 1981, 1991 (1994). Relying on this interpretation, Plaintiffs argue that the basic service tier must be offered in a manner that minimizes the need for unnecessary equipment.

Plaintiffs also invoke 47 U.S.C. § 544A(c)(2)(B)(ii) to support the same argument. 47 U.S.C. § 544A(c)(2)(B)(ii) establishes a regulatory goal. This goal is "to require cable operators offering channels whose reception requires a convertor box . . . to the extent technically and economically feasible, to offer subscribers the option of having all other channels delivered directly . . . without passing through the convertor box." 47 U.S.C. § 544a (c)(2)(B)(ii). The statement is only a regulatory goal. The provision establishes factors to be considered in the promulgation of regulations, but does not create regulations. In addition, 9 F.C.C.R. 1981, 1991 do no more than state what 47 C.F.R.§ 76.630 requires, which is that basic tier signals be provided in the clear. The Court is unable to cobble these provisions together to create an affirmative obligation upon cable providers where none currently exists.

11

Even if the Court were to consider the argument, it does not have a substantial likelihood of success on the merits.

7. The Franchise Agreement

Although Plaintiff Dearborn says a specific provision of its franchise agreement prohibits the unilateral change of PEG channel locations, Plaintiff Meridian's agreement appears to significantly differ. That agreement states that Defendants will be permitted to change the location of PEG stations after paying a small penalty. *See* Meridian Franchise Agreement § 17. Under the Meridian agreement, Defendants may unilaterally change the location of PEG channels. Plaintiff Meridian cannot succeed on the merits of its franchise claim.

Plaintiff Dearborn represents that its franchise agreement explicitly prohibits the unilateral relocation of PEG channels, and would be violated by Defendants' proposed actions. Defendants did not rebut this argument, and it is likely Dearborn will prevail on the merits.

B. Municipal Plaintiffs Will Suffer Irreparable Harm If the Status Quo Is Not Maintained

Municipal Plaintiffs and Gillette argue denial of their motion will result in irreparable harm.

The Court finds that any injury Gillette will suffer is not irreparable. She could request and receive Defendants' converter free of charge for one year. If she has more than one television she can be compensated in money damages for any rental fees she pays, if Plaintiffs ultimately wins this litigation.

Municipal Plaintiffs have more at stake.  They argue that denial of this motion will result in their inability to communicate with the public through governmental PEG channels.  According to the Municipal Plaintiffs, during the time the PEGs are not available in analog, Plaintiffs would lose a large portion of their audience because these viewers would be unable to: (1) receive the government access channel; (2) afford to pay the higher equipment cost; and (3) locate the PEG channel after they are moved.  In addition, the Municipal Plaintiffs allege they may even lose current digital cable subscribers because the channels will be more difficult to find by channel surfing or through the use of the cable program guide.  Plaintiffs also argue their educational programming will suffer irreparable harm through lost viewership, and the disruption of the educational uses these channels serve in school districts.

Defendants argue the harm will be minimal because they will provide a free converter for a year to each customer.  Although this free converter box addresses harm to Gillette, it leaves unanswered Municipal Plaintiffs' argument that they will be injured because of disruptions to their viewership.

The Court finds that the effect of the additional inconvenience of requesting a new box, the relocation of the channels, and lost viewers cannot be adequately calculated and compensated through monetary damages.

Defendants question the delay in bringing this motion.  Defendants notified Municipal Plaintiffs on November 15, 2007 of their plan.  Plaintiffs assert they attempted to get information and mediate the controversy before filing these motions.  Indeed, a member of Congress is involved in the dispute and, has scheduled a legislative hearing.

Because of these efforts the two month delay does not undercut the Municipal Plaintiffs' claim of irreparable harm.

C.  <u>Defendants and Others will not be Significantly Harmed and the Public Interest will be Served if the Status Quo is Maintained</u>

Plaintiffs argue that Defendants will not be significantly harmed if their motion is granted. They say there is no reason why Defendants must transfer the PEG channels on January 15, 2008. Conversely, Defendants maintain they will face financial hardship if the Court grants Plaintiffs' motion because it will reduce their ability to introduce new products and remain competitive. According to Defendants, they must "meet [their] customers' needs" by digitizing channels to free up space and provide new channels and services. Witness David Bruhl testified that a grant of Plaintiffs' motion would hinder the ability to add four high-definition stations on January 15, 2008 as planned. Defendants also say the public has an interest in the transition from analog to digital.

To the extent the Court accepts Defendants' argument that it must digitize channels, it does not agree that the transition must occur on January 15, 2008. Indeed, Defendants indicated at the hearing they could go forward on January 15, 2008 with the addition of these new channels in most areas. Further, while the Court agrees there are some general benefits with digitizing channels, it finds the public interest is better served by the temporary preservation of the PEG channels in their analog format so the public may maintain access to vital information. Therefore, although consumers looking forward to Defendants' new channels and services may be inconvenienced by a delay, any harm they may suffer does not outweigh the harm to Plaintiffs and to the public.

14

## V. CONCLUSION

Both sides in this dispute have substantive arguments on the merits which weigh in their favor. Until the merits of this case can be fully sorted, the Court finds the balance of the equities -- substantial harm to others, the public interest and harm to the municipal Plaintiffs -- weigh in favor of the relief sought by Plaintiffs. The status quo will be maintained.

Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction is **GRANTED**.

## VI. ORDER

**IT IS ORDERED** that Defendants are prohibited, without the permission of the Court, from moving channels for public, educational and governmental use ("the PEG channels") from their current location or changing the format in which they are delivered to subscribers until further Order of the Court.

**IT IS FURTHER ORDERED** that Plaintiffs are not required to provide security since Defendants acknowledge that any damage claims they have against the Municipal Plaintiffs for their regulation of cable service are limited by 47 U.S.C. §555a(a) to injunctive or declaratory relief. *See also Time Warner Entertainment Co., L.P. v F.C.C.*, 93 F.3d 957, 980 (D.C. Cir. 1996)(noting franchising authorities' immunity from monetary damages); *Jones Intercable of San Diego, Inc. v City of Chula Vista*, 80 F.3d 320, 326 (9th Cir. 1996)(same).

**IT IS ORDERED.**

/s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: January 14, 2008

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 14, 2008.

s/Linda Vertriest
Deputy Clerk

---