**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**CITY OF DEARBORN, ET AL,**

                **Plaintiff(s),**         **CASE NUMBER: 08-10156**
                                       **HONORABLE VICTORIA A. ROBERTS**

**v.**

**COMCAST OF MICHIGAN III, Inc., ET AL,**

                **Defendant(s).**

_____/

**AMENDED ORDER**

**I.    INTRODUCTION**

Before the Court is Defendants Comcast of Michigan III, Inc.; Comcast of the South, Inc.; Comcast of Warren; and Comcast of Macomb's (collectively "Comcast") "Motion to Dismiss." (Doc. #19). Comcast says Plaintiffs' claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).

Oral argument was heard on August 19, 2008.

After the hearing, Comcast filed a "Motion for Leave to File Supplemental Memorandum on Primary Jurisdiction." (Doc. #39). Plaintiffs responded on September 19, 2008. Comcast's motion is **GRANTED**.

Comcast's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. For the reasons more fully discussed below, the Court holds: (1) federal law preempts state law as it pertains to public, educational and governmental channel ("PEG channel") requirements; (2) Plaintiffs do not have a cause of action under 47 U.S.C. §531(e); (3) the Federal Communications Commission ("FCC") has the special

1

competence to resolve questions regarding Plaintiffs' 47 U.S.C. §543(b)(7) claim; (4)

Plaintiffs' 47 C.F.R. §76.1603(b) claim is unripe; (5) Plaintiffs' 47 C.F.R. §76.630 claim

is abandoned; and (6) Plaintiffs' 47 U.S.C. §§ 541 and 544a claims are dismissed.

## II.    HISTORY OF FEDERAL CABLE LEGISLATION AND PEG CHANNELS

The Communications Act of 1934 ("Communications Act") gave the FCC broad

authority to regulate interstate communication by wire and radio, but it did not address

the regulation of cable television.  *ACLU v. FCC*, 823 F.2d 1554, 1557-58 (D.C. Cir.

1987).  The rise in cable television technology initially created legislative and regulatory

uncertainty.  *See Alliance for Cmty. Media v. FCC*, 529 F.3d 763, 767 (6th Cir. 2008).

In the 1960s, however, the FCC began to regulate cable franchises.  *Id.*

Municipalities assisted in the regulation by refusing to grant franchise agreements which

did not contain provisions regarding PEG channel access.  *See Time Warner Cable of

New York City v. City of New York*, 943 F.Supp. 1357, 1368 (S.D.N.Y. 1996) (citing

Daniel L. Brenner et al., *Cable Television and Other Nonbroadcast Video: Law and

Policy* § 6.04[1], at 6-34 (1996)); *Time Warner Entm't Co., L.P. v. FCC*, 93 F.3d 957,

972 (D.C. Cir. 1996) (citing H.R. Rep. No. 934, 98th Cong., 2d Sess. 20-21, 30 (1984),

*reprinted in* 1984 U.S.C.C.A.N. 4655, 4667).

In 1972, the FCC passed cable regulations, apparently a precursor to PEG

channel requirements, which required cable operators in the 100 largest markets to set

aside three channels for use by public, educational and governmental bodies at no cost.

*Time Warner Cable of New York City*, 943 F.Supp. at 1368 (citing *Cable Television

Report and Order*, 36 F.C.C.2d 143, 190-91, *aff'd on recon.*, 36 F.C.C.2d 326 (1972)).

"In introducing the regulations, the FCC stated the 'fundamental goals of a national

communications structure' would be furthered with the 'opening of new outlets for local expression, the promotion of diversity in television programming, the advancement of educational and instructional television, and increased informational services of local governments.'" *Id.*

In 1984, Congress amended the Communications Act when it passed the Cable Communications Policy Act of 1984 ("1984 Act"). The 1984 Act: (1) preserved the municipalities' role in the franchise process; and (2) affirmed the FCC's exclusive jurisdiction over cable service. *City of New York v. FCC*, 814 F.2d 720, 723 (D.C. Cir. 1987); *see also Alliance for Cmty. Media*, 529 F.3d at 767-78 (the 1984 Act allowed municipalities to continue regulating cable franchises, but imposed regulatory guidelines).

In 1992, Congress passed the Cable Television Consumer Protection and Competition Act ("1992 Act"). *Alliance for Cmty. Media*, 529 F.3d at 768. The 1992 Act: (1) clarified the role of local franchising authorities ("LFAs"); (2) codified restraints on the licensing activities of LFAs, including prohibitions on an exclusive franchise and the unreasonable refusal to award a competitive franchise; (3) provided cable providers the right to begin an action in a federal or state court within 120 days after it received a final and adverse decision from an LFA; (4) granted the FCC and local authorities the power to regulate prices; (5) imposed rate regulations on the cable industry; (6) required cable operators to carry television broadcast stations; (7) required cable operators to provide a basic tier of service that included PEG channels; (8) allowed franchising authorities to require cable operators to provide assurance that it will provide adequate PEG channel access; (9) enacted censorship provisions for indecent programs on PEG channels

(ultimately struck down on First Amendment grounds); (10) required the FCC to adopt regulations to ensure the rates cable operators charge for their "basic service tier" are reasonable; (11) directed the FCC to establish criteria to determine when the rates charged for other cable services are unreasonable; and (12) required cable operators to maintain a uniform rate structure throughout their service areas. *Id.*; *Time Warner Cable of New York City*, 943 F.Supp. at 1370-71 (citations omitted); *Time Warner Entm't Co., L.P.*, 93 F.3d at 966 (citations omitted).

Most recently, Congress enacted the Telecommunications Act of 1996 ("Telecommunications Act"), which phased out the rate requirements imposed by the 1992 Act. *Time Warner Cable of New York City*, 943 F.Supp. at 1371 (citing 47 U.S.C. §543(c)(3)).

## III.    OVERVIEW OF CASE AND PROCEDURAL HISTORY

In each of the Plaintiffs' municipalities, Comcast is operating pursuant to a franchise agreement. The City of Dearborn's franchise agreement prevents Comcast from relocating PEG channels without the City's consent. *Dearborn Franchise* §3.12. Both the Charter Township of Meridian and the Charter Township of Bloomfield's franchise agreements incorporate ordinance requirements that PEG channels be provided without additional charge to subscribers. *Meridian Franchise*, p.1 and ¶9(g); Ord. 70-91 (PEG channels provided without charge); *Bloomfield Franchise*, Art. V., Code of Ord. §34-116(c) (*all* residential subscribers . . . shall also receive all access channels at no additional charge). The franchise agreement in the City of Warren contains several bargained-for provisions regarding PEG channel capacity, including

4

Section 7.1, which prohibits Comcast from relocating the channels.

Comcast wants to: (1) convert PEG channels from analog to digital; and (2) maintain PEG channels on the basic service tier, but move them to the 900-channel range. PEG channels have historically been below the 100-channel range and available to cable subscribers without additional equipment.

If Comcast makes the proposed changes, cable subscribers could only access PEG channels if they: (1) have a television equipped with a QAM tuner; (2) have a digital television; or (3) lease/purchase converter boxes from Comcast. Comcast is prepared to provide one converter box per household, for one year, but a converter box would be needed for each television to access PEG channels.

Plaintiffs contend that to view PEG channels, subscribers would incur expenses over and above what they pay for other basic service tier channels; the rate increase amounts to $4.00 per month. Plaintiffs also contend the move will significantly limit PEG channel viewership and access because PEG channels would be difficult to find.

Plaintiffs say the change will affect more than 50,000 households within the Charter Township of Meridian and the City of Dearborn alone. Comcast says only 50% of its statewide customers subscribe to the limited basic tier of service, and estimate that the change will only affect 15,000 households.

The City of Dearborn, the Charter Township of Meridian, and Sharon Gillette, a Comcast cable subscriber in Meridian Township (collectively "Dearborn"), filed a Complaint against Comcast of Michigan III, Inc. and Comcast of the South, Inc. on January 11, 2008 (Doc. #1). The Complaint alleges Comcast's proposed actions are contrary to the nature and purpose of PEG channels as defined by federal law.

Specifically, Dearborn alleges the changes will violate: (1) franchise agreements/ordinances; (2) 47 U.S.C. §§ 531, 541, 543(b)(7), and 544a; and (3) 47 C.F.R. §§ 76.630 and 76.1603 (incorrectly cited as 47 C.F.R. §76.309).

On that same date, Dearborn filed a "Motion for Preliminary Injunction." (Doc. #2). Dearborn asked the Court to issue a preliminary injunction that required Comcast to provide PEG channels in their current format and channel location pending final disposition of the case. The Court granted the motion on January 14, 2008. (Doc. #7).

On February 5, 2008, the City of Warren's case against Comcast of Warren and Comcast of Macomb was consolidated with this litigation. (Doc. #13). The Charter Township of Bloomfield intervened on March 5, 2008. (Doc. #16).

The substantive claims of all Plaintiffs are the same.

On April 30, 2008, Comcast filed this motion to dismiss. The Alliance for Community Media and Alliance for Communications Democracy filed an *amicus curiae* brief opposing Comcast's motion on June 30, 2008. (Doc. #31).

## IV. STANDARD OF REVIEW

When reviewing a Fed. R. Civ. P. 12(b)(6) motion, the trial court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) (citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976)); *see also Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Because a Fed. R. Civ. P. 12(b)(6) motion rests upon the pleadings rather than the evidence, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence or evaluate the credibility of witnesses." *Miller*, 50 F.3d at 377 (citing *Cameron v. Seitz*, 38 F.3d 264, 270 (6th Cir. 1994)).

However, while this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). Rather, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory. *DeLorean*, 991 F.2d at 1240 (citations omitted).

When subject matter jurisdiction is challenged under Fed. R. Civ. P. 12(b)(1), the plaintiff has the burden to prove jurisdiction. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125 (6th Cir. 1996). If the attack on jurisdiction is a facial attack on the complaint, the Court must accept the allegations in the complaint as true and construe them in a light most favorable to the non-moving party. *United States v. A.D. Roe Co., Inc.*, 186 F.3d 717, 721-22 (6th Cir. 1999). If the attack is factual, however, the Court may weigh evidence and resolve factual disputes. *Id.* Here, Comcast launches a facial attack on Plaintiffs' Complaint.

## V.    APPLICABLE LAW AND ANALYSIS

### A.    47 U.S.C. §531 and Franchise Agreements/Ordinances

#### 1.    Michigan's Uniform Video Services Local Franchise Act is Preempted by 47 U.S.C. §531

Comcast contends that 47 U.S.C. §531 is not implicated. Rather, Comcast says any rights regarding the use of PEG channels stem from franchise agreements between cable operators and franchising authorities. *See Leach v. Mediacom*, 240 F.Supp.2d 994, 998 (S.D. Iowa 2003) ("any rights regarding the use of public access channels are not created by § 531, but stem from franchise agreements between cable operators and

franchising authorities").

Further, Comcast says any terms in franchise agreements relating to PEG channels and their placement that are "inconsistent with" or "in addition to" those set forth in Michigan's Uniform Video Services Local Franchise Act ("Local Franchise Act") became null and void when the Local Franchise Act went into effect in 2007.  *See e.g.*, MCLA §484.3305(3) ("any provisions of an existing franchise that are inconsistent with or in addition to the provisions of a uniform video service local franchise agreement are unreasonable and unenforceable by the franchising entity"); *see also Nixon v. Missouri Mun. League*, 541 U.S. 125, 140 (2004) ("federal legislation threatening to trench on the States' arrangements for conducting their own governments should be treated with great skepticism, and read in a way that preserves a State's chosen disposition of its own power").

Comcast says that because those franchise terms were rendered unreasonable and unenforceable under state law, and state law does not contain any requirements concerning PEG channel placement, delivery format or the process for changing PEG channel locations, its proposed changes comport with obligations imposed on them by state law.

Plaintiffs seek to enforce these so-called "inconsistent with" or "in addition to" terms under federal law.  *See* 47 U.S.C. §531(c) ("[a] franchising authority may enforce any requirement in any franchise regarding the providing or use of such channel capacity").

Incumbent on the Court is to interpret both federal and state law and to give meaning to Congress's express intent that PEG channels be "available to all community

members on a nondiscriminatory basis." *See* H.R. Rep. No. 102-628 at 85 (1992).

Section 531 expressly permits "a franchising authority" to enforce PEG channel requirements in franchise agreements. *See Denver Area Educ. Telecommunications Consortium, Inc. v. FCC*, 518 U.S. 727, 789 (1996) ("[§ 531(b)] authorize[s] local franchise authorities to require cable operators to set aside channel capacity for PEG [channel] access when seeking new franchises or renewal of old ones"); *Goldberg v. Cablevision Sys. Corp.*, 261 F.3d 318, 320-21 (2nd Cir. 2001) (a franchising authority can "enforce any requirement in any franchise [agreement] regarding the providing or use of [PEG] channel capacity") (citation omitted); *Time Warner Entm't Co., L.P.*, 93 F.3d at 972 (franchising authorities may mandate PEG channel access as a franchise condition); *Time Warner Cable of New York*, 943 F.Supp. at 1367 ("The [1984 Act gave] . . . a franchising authority the power to require an operator to provide PEG channels").

On the other hand, the Local Franchise Act purports to restrict a franchising authority's ability to enforce PEG channel requirements in existing franchise agreements that are beyond the scope of the Local Franchise Act.

Because the Local Franchise Act makes unenforceable what federal law explicitly makes enforceable, the Local Franchise Act is preempted by 47 U.S.C. §531. *See* 47 U.S.C. §556(c) ("Except as provided in [47 U.S.C. §557], *any provision of law of any State*, political subdivision, or agency thereof, or franchising authority, or any provision of any franchise granted by such authority, *which is inconsistent with this chapter shall be deemed to be preempted and superseded*") (emphasis added).

The language in 47 U.S.C. §531 is "unmistakably clear" and answers the skepticism discussed in *Nixon*. *See Nixon*, 541 U.S. at 140-41 (Congress must make

its intention to override a State's power "unmistakably clear") (citing *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991)).

The Court's holding is not changed by the argument Comcast made for the first time at oral argument. Comcast said then that 47 U.S.C. §531 only grants a "franchising authority" the ability to require a certain *number* of PEG channels in franchise agreements; Comcast contends the provision does not address placement. Importantly, Comcast does not cite any authority for this narrow reading of section 531.

Section 531(c) says a franchising authority "may enforce any requirement in any franchise *regarding* the providing or use of such channel capacity," which relates to PEG channels. (Emphasis added). "Such enforcement authority *includes the authority to enforce any* provisions of the franchise for services, facilities, or equipment proposed by the cable operator *which relate* to public, educational, or governmental use of channel capacity . . . ." *Id.* (Emphasis added).

The Court finds the statutory language to be broader than Comcast's narrow reading. *See* H.R. Rep. No. 98-934 at *46 ("[§ 531(c)] authorizes franchising authorities to enforce any franchise provision related to the use of PEG channel capacity, or related to services, facilities or equipment to be provided for PEG use . . ."); *see also Alliance for Cmty. Media*, 529 F.3d at 785 ("[§ 531(a)] establishes the authority of LFAs to call for *franchise terms relating* to the 'use of channel capacity for public, educational, or governmental use' but 'only to the extent provided in this section'") (emphasis added) (citation omitted); *Denver Area Educ. Telecommunications Consortium, Inc.*, 518 U.S. at 789; *Goldberg*, 261 F.3d at 320-21; *Time Warner Entm't Co., L.P.*, 93 F.3d at 972-73; *Time Warner Cable of New York City*, 943 F.Supp. at 1367.

10

### 2. Even if the State of Michigan is Deemed the "Franchising Authority" as Discussed in 47 U.S.C. §531, the Local Franchise Act is Still Preempted

Comcast makes a more nuanced argument: that the State of Michigan - not local units of government - is the "ultimate source of franchising authority" for purposes of determining any inconsistency with §531; that §531 is permissible in its language: franchising authorities *may* enforce PEG channel requirements established under franchise agreements; that by enacting the Local Franchise Act, the State of Michigan has merely made the election permitted by §531 *not* to require PEG channel obligations in franchise agreements; and, therefore, there is nothing inconsistent between state law and §531.

However, the legislative history that Comcast relies on for this argument is not dispositive on preemption. As stated above, 47 U.S.C. §556(c) is clear in its language that any provision of law of any State is "preempted and superceded" if it is inconsistent with federal law regarding PEG channel requirements. Because the Local Franchise Act restricts PEG channel requirements, it matters not whether the franchising authority is the state and/or a municipality; the law is preempted.

### 3. Plaintiffs' Claims are not Subject to Dismissal

The Court's ruling that the Local Franchise Act is preempted by federal law simply means the Court concludes that Plaintiffs state a cause of action under their various franchise agreements. The strength of these factual allegations is not before the Court, and Plaintiffs' claims cannot be dismissed at this stage of the proceedings.

### B. Editorial Control Pursuant to 47 U.S.C. §531(e)

Under 47 U.S.C. §531(e), a cable operator "shall not exercise any editorial control over any public, educational, or governmental use of channel capacity provided pursuant to this section . . . ."

Plaintiffs rely on legislative history to support their argument that this section prohibits Comcast from making its proposed changes. *See* H.R. Rep. No. 98-934 at *47, *35, *31 (the prohibition of editorial control "is integral to the concept of the use of PEG channels that . . . [they] be free from any editorial control or supervision by the cable operator," that "cable operators act as [] conduit[s]", and "are controlled by a person other than the cable operator").

However, this legislative history does not directly support their argument, and Plaintiffs do not cite any case law in support of their argument. Plaintiffs' 47 U.S.C. §531(e) claim is dismissed.

## C.      Plaintiffs' 47 U.S.C. §543(b)(7) Claim

Section 543 is the rate regulation statute.  Under 47 U.S.C. §543(b)(7)(A)(ii):

[e]ach cable operator of a cable system shall provide its subscribers a separately available basic service tier to which subscription is required for access to any other tier of service.  Such basic service tier shall . . . consist of . . . [a]ny public, educational, and governmental access programming required by the franchise of the cable system to be provided to subscribers.

Comcast says the FCC has the exclusive authority to regulate cable service rates, and, therefore, the Court lacks subject matter jurisdiction over Plaintiffs' 47 U.S.C. §543(b)(7) claim.  Further, Comcast says the primary jurisdiction doctrine does not apply.  *See United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956) ("'Primary jurisdiction' . . . applies where a claim is *originally cognizable* in the courts") (emphasis

12

added).

Primary jurisdiction is a legal doctrine that allows a court to refer issues within the special competence of an administrative agency to that agency for a ruling.  *Reiter v. Cooper*, 507 U.S. 258, 268 (1993) (citations omitted).

Plaintiffs say that while the Court has concurrent jurisdiction with the FCC and may refer questions to the FCC, there is no need to do so because the plain language of the franchise agreements, statutes, and regulations allows their claim to proceed.

To support their argument, Plaintiffs cite the September 17, 2008 testimony of Monica Shah Desai, Chief of the FCC Media Bureau:

> It has come to our attention that some programmers are moving PEG channels to a digital tier, or are treating them as on-demand channels. We are concerned by these practices.  We believe that placing PEG channels on any tier other than the basic service tier may be a violation of the statute, which requires that PEG access programming be placed on the basic service tier.  Subjecting consumers to additional burdens to watch their PEG channels defeats the purpose of the basic service tier. We believe it is important to ensure that consumers are able to get access equally to all channels belonging on the basic service tier, and that this should be the case regardless of what type of system the channels are being carried on.

### 1.    The Court has Subject Matter Jurisdiction Over Plaintiffs' 47 U.S.C. §543(b)(7) Claim Through 47 U.S.C. §401(b)

The Court disagrees with Comcast's argument that Plaintiffs' claim is not "originally cognizable" in this Court.

Under 47 U.S.C. §401(b), Plaintiffs have an express right of action in federal court to enforce an order from the FCC:

> [I]f *any person* fails or neglects to obey any order of the Commission other than for the payment of money, while the same is in effect, the Commission *or any party injured* thereby . . . may apply to the appropriate district court of

the United States for enforcement of such order.

(emphasis added).  "[A]n order resulting from a rulemaking proceeding can be an order for purposes of § 401(b)."  *Alltel Tennessee, Inc. v. Tennessee Pub. Serv. Comm'n*, 913 F.2d 305, 308 (6th Cir. 1990).  An action under 47 U.S.C. §401(b) is available where an order mandates specific action by the party against whom the plaintiff seeks enforcement.  *See id.*; *see also Cavalier Tel., LLC v. Virginia Elec. & Power Co.*, 303 F.3d 316, 321-22 (4th Cir. 2002) ("Thus, section 401(b) creates a private right of action in federal district court for enforcement of any order of the Commission that does not require the payment of money for those injured by another's failure to obey the order") (citing *Hawaiian Tel. Co. v. Pub. Utilities Comm'n of Hawaii*, 827 F.2d 1264, 1277 (9th Cir. 1987)).

To proceed on this claim, Plaintiffs must have identified FCC orders which impose obligations on cable providers violated by Comcast.

Plaintiffs cite several FCC orders which require the basic service tier to include PEG channels.  *See In the Matter of Implementation of Sections of the Cable Television Consumer Protection and Competition Act of 1992 Rate Regulation,* 8 FCC Rcd 5631, 5738 (1993) ("[W]e require a cable operator to carry PEG channels on the basic tier unless the franchising agreement explicitly permits carriage on another tier"); *In The Matter Of Annual Assessment Of The Status Of Competition In The Market For The Delivery of Video Programming*, 21 FCC Rcd. 2503, 2512 (2006) ("[Basic service tier] must include all local television signals and public, educational, and governmental access channels . . ."); *see also In the Matter of Social Contract for Comcast Cable Communications, Inc.*, 13 FCC Rcd. 3612, at *75 (1997) ("[Basic service tier] . . .

includes the signals of any local television broadcast stations and any public, educational or governmental access channel *required by the relevant franchise* to be carried on the [basic service tier]") (emphasis added); 47 C.F.R. §76.901(a) ("The basic service tier shall, at a minimum, include . . . any public, educational, and governmental programming *required by the franchise* to be carried on the basic tier . . .") (emphasis added).

Plaintiffs argue that because Comcast seeks to drastically change the way it provides PEG channels on the "basic service tier," from the consumers' point-of-view, PEG channels will no longer be provided on the basic tier. Despite Comcast's insistence that the PEG channels will still be on the basic service tier even though they will require additional equipment to access, and be at the 900 level, Plaintiffs disagree and say Comcast's proposed changes violate its obligation to provide PEG channels on the basic-tier level.

Plaintiffs theory is cognizable. *See Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967, 990 (2005) ("It is common usage to describe what a company 'offers' to a consumer *as what the consumer perceives* to be the integrated finished product, even to the exclusion of discrete components that compose the product, as the dissent concedes") (emphasis added) (citation omitted).

Plaintiffs state a claim under 47 U.S.C. §401(b) to enforce FCC orders that require the maintenance of PEG channels on the basic service tier.

### 2. The Primary Jurisdiction Doctrine

A holding that Plaintiffs state a 47 U.S.C. §543(b)(7) cause of action – through 47

U.S.C. §401(b) – does not end the discussion.  The Court must now decide whether the

FCC, rather than the Court, should resolve questions pertaining to that claim.

According to the Sixth Circuit in 1990:

Under the doctrine of primary jurisdiction, questions *within the special competency of an administrative agency* should be resolved by that agency. The principal reasons for the doctrine of primary jurisdiction are to obtain the benefit of the expertise and experience of the administrative agencies and the desirable uniformity which occurs when a specialized agency decides certain administrative questions.  A court must apply the doctrine of primary jurisdiction on a case-by-case basis, deferring to an administrative agency only when the reasons for the existence of the doctrine are present.

*Alltel Tennesee*, 913 F.2d at 309 (emphasis added) (citations omitted).

Justice Frankfurter first explained:

in cases raising issues of fact *not within the conventional experience of judges* or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. . . .  Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to *agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure*.

*Far East Conference v. United States*, 342 U.S. 570, 574-75 (1952) (emphasis added).

In short, the doctrine "is concerned with promoting proper relationships between the

courts and administrative agencies charged with particular regulatory duties."  *W. Pac.*

*R. R. Co.*, 352 U.S. at 63.

Nonetheless, the doctrine should not cause the court to abstain from determining

a dispute unless "the reasons for the existence of the doctrine are present and . . . the

purposes it serves will be aided by its application in the particular litigation." *Id.* at 64.

Similarly, the doctrine should not be invoked where the "FCC plainly has expressed its

views on the issue presented and the economies are better served if the matter remains

in the district court." *Beattie v. CenturyTel, Inc.*, 234 F.R.D. 160, 166 (E.D. Mich. 2006).

Beyond the desirability of a specialized agency first examining the question and

the need for uniform application of the rule, the Court should also consider whether:

(1)      the issue is within the conventional expertise of judges;

(2)      the issue lies within the agency's discretion or requires the exercise of agency expertise;

(3)      there is a substantial danger of inconsistent rulings;

(4)      a prior application to the agency has been made;

(5)      the issue has already been addressed by the agency;

(6)      judicial economy is served by having the agency decide the question; and

(7)      referral will result in substantial delay and added expense.

*Id.* at 165-66 (citing *Gilmore v. Sw. Bell Mobile Sys., L.L.C.*, 210 F.R.D. 212, 221 (N.D.

Ill. 2001); *Young Soon Oh v. AT & T Corp.*, 76 F.Supp.2d 551, 557 (D.N.J. 1999)).

A fact that has become apparent through the progression of this litigation is that

Congress did not contemplate the existence of digital cable as it is today. Nor did it

contemplate a basic service tier which spans digital and analog formats. This is not

surprising, given the rise in digital cable after the Telecommunications Act. Thus, to the

extent the Court attempts to determine whether Comcast's proposed actions violate the

requirement of the basic service tier, the Court is forced to apply an old rubric to a

technology that was not foreseen by Congress in 1934, 1984, 1992, or 1996, when it

otherwise spoke directly on these issues.

17

Both parties advance arguments that are correct for different reasons. Comcast is correct, that under a literal interpretation of the definition of "basic service tier," Comcast may not be in technical violation of its basic service tier obligations if allowed to put the proposals into effect. Plaintiffs are correct, because Comcast's actions may circumvent the substantive intent of that obligation; from the consumer's point-of-view, Comcast's proposed changes arguably would not maintain PEG channels on the basic service tier. The Court is left to attempt to fit a digital tier into a regulatory framework that conceived only of analog.

These circumstances support the Court's invocation of the FCC's primary jurisdiction to initially address questions in relation to FCC orders. The FCC has "special competence" in matters of cable technology. Not only would its expertise assist in the resolution of the distinctions and similarities of analog and digital service, the FCC's perch atop the technological progression of the cable industry from its inception allows it to apply its institutional knowledge to a new and emerging technology.

The issues before the Court turn on the technological nature of the distinctions between analog and digital formats, a question not within the expertise of judges. The FCC's technological expertise would be especially helpful. *See United States v. Any & All Radio Station Transmission Equip.*, 204 F.3d 658, 664 (6th Cir. 2000) (the primary jurisdiction doctrine reflects the "desire for uniformity in adjudication and the belief that the decisionmaker with the most expertise and broadest perspective regarding a statutory or regulatory scheme will be most likely to resolve the issue correctly") (citation omitted). The FCC has special expertise and competence regarding Congress's

mandated policy of nationwide transition to digital technology. *See Ellis v. Tribune Television Co.*, 443 F.3d 71, 83 (2nd Cir. 2006) (the doctrine addresses questions not "within the conventional experience of judges" and that involve "technical or policy considerations within the agency's field of expertise") (quoting *Nat'l Communications Ass'n, Inc. v. Am. Tel. & Tel. Co.*, 46 F.3d 220, 222 (2nd Cir. 1995)).

Resolution of these issues by the FCC will affect national cable policy and avoid inconsistent court rulings. As the country progresses towards digital technologies, additional cable companies will consider implementing Comcast's proposed actions, and more states will contemplate legislation in light of these ongoing changes. *See e.g.*, *City of St. Petersburg, Florida v. Bright House Networks, LLC*, 2008 WL 1897619 (M.D. Fla. Apr. 28, 2008).

When the doctrine of primary jurisdiction applies, the Court "has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice." *Cooper*, 507 U.S. at 268-69 (citations omitted).

In light of the ongoing preliminary injunction, the Court exercises its discretion to stay the case pending review by the FCC.

**D.    Cable Operators' Obligation to Provide Notice to Subscribers Pursuant to 47 C.F.R. §76.1603(b)**

The Code of Federal Regulations requires cable operators to give advance notice of proposed changes:

> Customers will be notified of any changes in rates, programming services or channel positions as soon as possible in writing. Notice must be given to subscribers a minimum of thirty (30) days in advance of such changes if

the change is within the control of the cable operator.

47 C.F.R. §76.1603(b).

Comcast says the Court cannot consider Plaintiffs' claim under 47 C.F.R. §76.1603(b) because an opinion on this issue would be advisory. According to Comcast: (1) a challenge to the notice provided in 2007 is moot; and (2) the notice it may provide to customers regarding a change in PEG channel locations in the future is unripe.

If the preliminary injunction is lifted, Comcast will have to comply with the 30-day notice requirement, and Plaintiffs will be entitled to relief if the notice is not accurate and timely.

Plaintiffs' claim for insufficient notice is unripe, and the Court dismisses it without prejudice.

### E.    Plaintiffs Abandon Their 47 C.F.R. §76.630 Claim

In a footnote, Plaintiffs argue that the anti-scrambling requirement embodied in 47 C.F.R. §76.630 is enforceable under 47 U.S.C. §401(b). In that same footnote, however, Plaintiffs say "[b]ecause we are unable to see that Comcast would benefit from re-scrambling, if Comcast's counsel is willing to confirm that the company will not scramble the channels, the claim can be put to rest subject to that confirmation."

Comcast indicated that "[t]he digital transmission will be sent 'in the clear' and may be received by all cable subscribers with digital capabilities without any degree of decoding."

20

Accordingly, the Court finds Plaintiffs abandoned their 47 C.F.R. §76.630 claim.

### F.     No Private Right of Action Under 47 U.S.C. §§ 541 and 544a

Plaintiffs do not quarrel with Comcast's argument that they do not have a private right of action under 47 U.S.C. §§ 541 and 544a.  Accordingly, those claims are dismissed.

## VI.     CONCLUSION

Comcast's motion is **GRANTED IN PART AND DENIED IN PART**.  The Court **DISMISSES WITH PREJUDICE** Plaintiffs' claims under 47 C.F.R. §76.630 and 47 U.S.C. §§ 531(e), 541, and 544a.

Plaintiffs' claim under 47 C.F.R. §76.1603(b) is **DISMISSED WITHOUT PREJUDICE**.  Plaintiffs may raise this claim again if the preliminary injunction is lifted and Comcast does not provide proper notice of the changes to the PEG channels.

The Court **DENIES** Comcast's motion on Plaintiffs' claim that their franchise agreements/ordinances are enforceable pursuant to 47 U.S.C. §531(a)-(c).

The Court intends to **REFER** six questions to the FCC and **STAY** Plaintiffs' claim under 47 U.S.C. §543(b)(7) pending a ruling from the FCC:

(1)     When cable operators shift costs to consumers, can a locality act to prevent an "evasion" of the duty to provide service at reasonable rates? (*See In the Matter of Implementation of Sections of the Cable Television Consumer Protection and Competition Act of 1992 Rate Regulation*, 8 FCC Rcd 5631, 5915-5917 (F.C.C. 1993):

We define a prohibited evasion as any practice or action which avoids the rate regulation provisions of the Act or our rules contrary to the intent of

the Act or its underlying policies. We also believe that . . .: (1) implicit rate increases; (2) a significant decline in customer service without a similar decline in price; and (3) deceptive practices such as improper cost shifting or intentionally misstating revenues [are evasions].

(2)     Does the requirement to provide PEG channels on the basic service tier apply in communities where rates are subject to "effective competition"? (*See* Pl. Response Br. p.19 n.16 "Comcast has argued that the requirement to provide PEG [channels] on [the] basic service tier does not apply in communities where rates are subject to effective competition. Plaintiffs disagree")

(3)     Does the Court look from the consumer's point-of-view to determine whether: (a) a programming service is part of the basic service tier; and (b) digitization of the PEG channels is "discriminatory" because some customers may be required to obtain additional equipment to view the channels? (*See* H.R. Rep. No. 102-628 at 85 (1992) (PEG channels must be "available to all community members on a nondiscriminatory basis")).

(4)     Are cable operators precluded from charging for equipment used in connection with the reception of PEG channels on the basic service tier?

(5)     Can PEG channels be digitized, require special equipment to be accessed, and still be considered available on the basic service tier?

(6)     Is digitization of PEG channels "discriminatory" because some customers may be required to obtain additional equipment to view the channels?

The parties have until October 17, 2008 to submit input on these questions. The Court will consider the input before it submits questions to the FCC; if the Court does not receive any input within the time frame provided, these questions will be submitted to the FCC.

**IT IS ORDERED**.

S/Victoria A. Roberts

Victoria A. Roberts

United States District Judge

Dated: November 25, 2008

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on November 25, 2008.

s/Carol A. Pinegar

Deputy Clerk